1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SAM JOHNSON,                              No.  2:12-cv-1059 KJM AC

12                  Plaintiff,

13           v.                                 ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14    JENNIFER SHAFFER, et al.,

15                  Defendants.

16

17           On October 16, 2013, the court held a hearing on the following matters: (1) plaintiff's

18    motion to compel discovery responses (ECF No. 25); (2) plaintiff's motion for class certification

19    (ECF No. 29); and (3) defendants' motion for summary judgment (ECF No. 30).  Keith A.

20    Wattley appeared for plaintiff.  Megan R. O'Carroll and Heather M. Heckler, California Deputies

21    Attorney General, appeared for defendants.  On review of the motions, the documents filed in

22    support, upon hearing the argument of counsel and considering the subsequently-filed letter

23    briefs, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

24           I.      FACTUAL AND PROCEDURAL BACKGROUND

25                   A.  Allegations of the Complaint

26           This action proceeds on the basis of the First Amended Complaint filed November 15,

27    2012 (ECF No. 18).  Plaintiff Sam Johnson is a California inmate serving an indeterminate life

28    sentence, who seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.  Plaintiff

challenges the constitutionality of the protocol adopted by the Board of Parole Hearings' Forensic Assessment Division ("the FAD protocol") for the preparation of psychological evaluations to be considered in determining prisoners' suitability for parole.  The complaint alleges that defendants, California officials including the heads of the Department of Corrections and Rehabilitation ("CDCR"), Board of Parole Hearings ("BPH"), and BPH Forensic Assessment Division ("FAD"), all of whom are sued in their official capacities only, deliberately adopted a protocol requiring *inter alia* the use of three risk assessment tools that they knew to be unreliable.  According to plaintiff, "The primary purpose of establishing the FAD and implementing the new protocol was to prejudice lifers appearing before the Board by making it harder for them to obtain a favorable psychological evaluation, harder to obtain and favorable parole determination and harder to establish a favorable administrative record for challenging parole decisions in court."  ECF No. 18 ¶29.

The First Amended Complaint alleges as follows.  The BPH has long considered psychological evaluations when evaluating prisoners' suitability for parole, but prior to 2007 those evaluations were routinely conducted by mental health professionals on staff at the various institutions.  In the spring of 2007, BPH issued a memo forbidding prison-based staff psychologists from conducting lifer evaluations and requiring a newly constituted FAD team to handle all of them.  BPH hired its own FAD psychologists to prepare evaluations because evaluations prepared by prison-based clinicians were too often favorable to prisoners and too frequently supported judicial rejections of BPH decisions denying parole.

The FAD protocol requires the use of three specific risk assessment tools to predict future violence: the Psychopathy Checklist-Revised ("PCL-R"); the 20-item Historical, Clinical, Risk Management tool ("HCR-20"); and the Level of Service/Case Management Inventory ("LS/CMI").  In August 2006, BPH convened a panel of forensic psychologists and other experts to assess the validity of these tools for use in California's parole consideration process.  The invited experts advised against use of these tools, on grounds they are scientifically unreliable and have not been validated for predicting violence among long-term prisoners like California lifers.  BPH mandated the use of these tools despite this expert advice, knowing and intending that the

tools would result in unreliable findings of dangerousness and thus provide a basis for denial of parole.  BPH officials lied to the public and to the state's regulatory agency about the advice they had received from their expert consultants.

In late 2005 and early 2006, prior to the imposition of centralized FAD evaluations, the BPH had sought to limit the focus of prison-based psychological reports to the presence or absence of mental illness.  The Board discouraged assessment of "remorse" and "insight" into the commitment offenses, on grounds these were matters for the commissioners to assess rather than proper subjects of psychological reports.  However, Board findings regarding lack of insight were frequently criticized in judicial opinions, particularly where they were at odds with the reports of psychologists working in the institutions.  The FAD protocol places renewed emphasis on the "clinical" evaluation of remorse and insight, despite BPH knowledge that these factors do not statistically correlate with risk in the lifer population and that clinicians are incapable of assessing such matters.  The emphasis on remorse and insight in the FAD evaluations is intended to support parole denials and insulate them from judicial review.

Plaintiff also alleges that BPH established the FAD before attempting to promulgate regulations to authorize it.  When BPH did attempt to promulgate such regulations, it lied about the opinions of its expert consultants to the state agency responsible for certifying compliance with the applicable rule-making procedures.  BPH has continued to shield the FAD's systematic deficiencies and biases from public scrutiny.  In July 2010, California's Office of the Inspector General ("OIG") issued a Special Report on BPH's Psychological Evaluations.  The OIG determined that BPH has no system for tracking or otherwise monitoring the number of errors in psychological evaluations, no system for determining whether FAD psychologists are assessing higher levels of risk than were found in previous evaluations of the same prisoners, an inadequate oversight system for senior FAD psychologists to review the reports of FAD staff psychologists, and inadequate training of its psychologists.  In essence, senior psychologists routinely rubber-stamp staff psychologists' reports without verifying the validity of anything written.  Due to these deficiencies, the OIG was unable to conduct the kind of review requested by the California Legislature, which provides oversight for BPH appointments and operations.

3

1    Plaintiff sets forth the facts of his own case to illustrate the impact of the FAD protocol on

2 California parole-eligible life prisoners.  Plaintiff is an inmate at San Quentin State Prison,

3 serving a sentence of life with the possibility of parole.  Prior to his commitment offense plaintiff

4 had no history of violence and no juvenile record; all three of his prior convictions were

5 misdemeanors.  Both prior to and throughout 19 years of incarceration, he has maintained steady

6 employment.  He is currently in his third term as chair of the prison's Men's Advisory Council, a

7 leadership position that involves regular interaction with prison officials and with inmates of all

8 races.  His only disciplinary infraction in 19 years was a Division "F" offense six years prior to

9 his 2010 parole hearing.  He has no history of mental illness or substance abuse.  Plaintiff's risk

10 assessment evaluation was performed by FAD psychologist Richard Hayward, Ph.D. in 2009.

11 Dr. Hayward administered the three risk assessment tools used by the FAD to project future

12 dangerousness.  Dr. Hayward's resulting report to the BPH concluded that plaintiff lacked insight

13 and posed a high risk of recidivism.  These conclusions are incorrect, and resulted from the use of

14 unreliable tools and a biased evaluation process.  Plaintiff identifies numerous specific errors and

15 misstatements in Dr. Hayward's report that demonstrate its unreliability.  The BPH relied on the

16 report to deny plaintiff parole.

17    Plaintiff alleges that his situation is typical of that faced by parole-eligible lifers

18 throughout California's prisons.  Plaintiff's counsel has been contacted by lifers at 27 of the 32

19 California prisons that house lifers, including all eight of the prisons with the highest

20 concentrations of parole-eligible lifers, all of whom have similar complaints.  Because BPH

21 requires the FAD to conduct a psychological evaluation prior to every single parole consideration

22 hearing, all of the roughly 10,000 life prisoners who have served their minimum terms and are

23 therefore eligible for parole consideration are directly impacted by the protocol.

24    The First Amended Complaint sets forth sixteen overlapping causes of action.  The First

25 through Eleventh Causes of Action claim that the FAD protocol violates due process in various

26 ways: because it is biased against finding parole suitability; was adopted to fabricate evidence

27 that will support denial of parole and protect BPH from judicial review; intentionally relies on

28 invalid instruments; was adopted and justified by means of misconduct; provides no mechanism

4

1  for error correction; deprives prisoners of access to the data relied upon; fails to create a record of

2  the underlying psychological interviews, further contributing to the unreliability of the

3  evaluations; utilizes a standardless and arbitrary scoring system that renders the results of the

4  assessment tools even more unreliable than they are inherently; fails to consistently provide

5  inmate comments and objections to the Board, resulting in BPH rubber-stamping of FAD

6  evaluations without substantive review; denies prisoners their statutorily guaranteed right to

7  confront and cross-examine the evaluating psychologists at the parole hearing; systematically

8  overlooks errors and omissions in FAD evaluations; and intentionally operates to fabricate a basis

9  for a parole denials that thwarts the statutory scheme governing parole, while evading judicial

10  review.

11      The Twelfth Cause of Action claims that defendants' refusal to permit plaintiff and other

12  lifers to call FAD psychologists or other witnesses at their parole hearings violates due process

13  and equal protection under the Fourteenth Amendment.  The Thirteenth Cause of Action claims

14  that defendants' refusal to permit plaintiff and other lifers to call FAD psychologists or other

15  witnesses at their parole hearings violates due process and equal protection under the California

16  Constitution.  The Fourteenth through Sixteenth Causes of Action recast plaintiff's other due

17  process claims in state constitutional terms.  The Fifteenth Cause of Action additionally alleges a

18  violation of the California Administrative Procedures Act.

19      B.  Procedural History

20      This action was filed on April 20, 2012.  Although the complaint was filed by counsel and

21  unaccompanied by a request to proceed in forma pauperis, the case heretofore has been managed

22  according to the rules and procedures applicable to pro se prisoner civil rights cases.  See ECF

23  No. 5 (initial order directing status reports without setting a status conference, requiring a

24  discovery plan pursuant to Fed. R. Civ. P. 26, or requesting proposed cut-off dates for the phases

25  of litigation, and directing that motions be briefed pursuant to Local Rule 230(l)).[1]

26

27  _____

28  [1] Local Rule 240(c) exempts "prisoner actions" from the mandatory scheduling order requirement
    of Fed. R. Civ. P. 16(b).  "Prisoner actions," however, are defined for purposes of the Local Rules
    as actions brought in pro per by an inmate.  Local Rule 101.

1   Defendants moved to dismiss shortly after service of the complaint, and the motion was

2   subsequently amended, briefed, and argued.  The magistrate judge previously assigned to the case

3   found that "plaintiff's allegations regarding his specific case have failed to state a claim," but that

4   "plaintiff may be able to set forth a claim regarding a systematic problem with the psychological

5   assessments and the BPH."  ECF No. 17 at 9.  Accordingly, the complaint was dismissed with

6   leave to amend.  After the First Amended Complaint was filed, defendants answered.  ECF No.

7   21.  The discovery and scheduling order that followed was typical of those that issue routinely in

8   run-of-the mill prisoner civil rights cases.  See ECF No. 24 (order filed February 20, 2013).  It set

9   a discovery deadline of May 29, 2013 and a dispositive motions deadline of August 21, 2013.  Id.

10   Plaintiff's motion to compel was timely filed on May 29, 2013.  Plaintiff's motion for

11   class certification and defendants' motion for summary judgment were both timely filed on

12   August 21, 2013.  Of the three motions, only the motion for class certification was noticed for

13   hearing.  Hearing on the motions was subsequently consolidated, and the scheduling order was

14   amended to specify that Local Rule 230(l) does not apply to this action.  ECF No. 31.

15   II.   THE DISCOVERY DISPUTE AND RELATED SCHEDULING ISSUES

16   Pursuant to the scheduling order then in effect, discovery requests were to be served no

17   later than 60 days prior to the May 29, 2013 discovery cut-off.  Accordingly, the last day to serve

18   discovery requests was March 30, 2013 – only thirty-eight days after the order setting the

19   discovery deadline.

20   On March 29 and 30, 2013, plaintiff served defendants via electronic mail with his first set

21   of interrogatories, first set of requests for admissions, and first set of requests for production of

22   documents.[2]  Defendants took the position that the requests were improperly served and that no

23   response was necessary.  Upon learning of this position in early April, plaintiff's counsel

24   personally served the discovery requests.  At that point the deadline had passed.  Defendants

25   continued to maintain that because they had not been properly served prior to the deadline,

26   neither responses nor objections were required.

27

28   [2] Defendants also served discovery requests on March 29, 2013, to which plaintiff responded.

1    The dispute presented to the court is whether plaintiff's electronically served discovery

2  requests were properly served and therefore require response.  Defendants maintain that they

3  never consented to electronic service of discovery documents within the meaning of Fed. R. Civ.

4  P. 5(b)(2)(E).  Plaintiff contends that defendants' registration as CM/ECF filers constitutes such

5  consent pursuant to Local Rule 135(g)(1).  Defendants respond that CM/ECF registration

6  constitutes consent to electronic service only of documents filed with the court, and that Local

7  Rule 135's consent provision does not extend to discovery documents because they are not filed

8  with the court.

9    Local Rule 135(g)(1) provides that registration as a CM/ECF user constitutes consent to

10 receiving and making electronic service pursuant to Fed. R. Civ. P. 5(b)(2)(E), and waiver of the

11 right to service by any other means.  The local rule does not refer to discovery documents,

12 although the Federal Rule it references does expressly include "discovery papers" within its

13 scope.  See Fed. R. Civ. P. 5(a)(1)(C).  The Local Rule's reference to Rule 5 therefore supports

14 plaintiff's position.  On the other hand, Local Rule 135(g)(1) specifies that electronic service "is

15 complete upon transmission of the Notice of Electronic Filing."  This language suggests that the

16 consent provision applies only to those documents electronically filed on the case docket.  The

17 court need not resolve the arguable ambiguity of the Local Rule, however, because the fact that

18 this dispute has arisen at all raises a larger problem regarding the management and scheduling of

19 this case.

20    Had the parties been required to conduct a Rule 26 conference and prepare a discovery

21 plan at the outset of the litigation, this dispute would not have arisen because the parties would

22 have discussed the procedures for service of discovery requests.[3]  More fundamentally, given the

23 facts that plaintiff is represented by counsel and seeks systemic injunctive relief, this case should

24 not have been proceeding on a schedule devised for pro se inmates seeking damages for discrete

25 _____

26 [3] Fed. R. Civ. P. 26 exempts from its initial disclosure, conference and discovery plan
requirements "an action brought without an attorney by a person in the custody of. . . a state. . ."

27 Fed. R. Civ. P. 26(a)(1)(B), (f)(1).  The parties and the court have all previously assumed
applicability of the Rule 26 exemption, which by its terms does not apply to this case because

28 plaintiff has never been "without an attorney."

7

1   wrongs.  In particular, the abbreviated discovery and dispositive motion deadlines previously

2   imposed after filing of the First Amended Complaint were inappropriate to the scope of the

3   claims.  Accordingly, the case is now in an unfortunate posture: plaintiff seeks class certification

4   and defendants seek summary judgment, but plaintiff has obtained no discovery despite a good

5   faith attempt to timely propound discovery requests within the framework imposed by the court in

6   error.  For these reasons, the undersigned finds good cause to reopen discovery and reschedule the

7   case.  Plaintiff's motion to compel discovery responses is accordingly construed as a motion to

8   reopen discovery, and as such is granted in part.

9       The court declines to compel responses to plaintiff's previously propounded discovery

10  requests at this time.  Because the permissible scope of discovery will turn in part on the

11  questions whether the proposed class is certified and whether defendants are entitled to judgment

12  as a matter of law on any of plaintiff's claims, the undersigned will proceed to those issues.  Upon

13  the district court's adoption or rejection of the Findings and Recommendations which follow, the

14  case will be set for a status conference to reschedule discovery and dispositive motions deadlines.

15      Finally, plaintiff's request for sanctions is denied.  The failure of counsel for the parties to

16  communicate in advance about the service of discovery was a mutual failure.  Sanctions therefore

17  are not warranted.

18  III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

19      Defendants move for summary judgment on four grounds, contending that: (1) plaintiff's

20  due process claims are foreclosed by Swarthout v. Cooke, 131 S.Ct. 859 (2011); (2) plaintiff fails

21  to state a claim for violations of equal protection; (3) plaintiff's pendant state law claims are

22  barred by the Eleventh Amendment; and (4) plaintiff has failed to overcome the presumption that

23  the BPH acted with fairness and integrity in developing the FAD assessments.  The first three

24  issues present questions of law that can and should be resolved prior to the reopening of

25  discovery, as their early resolution will promote judicial economy and streamline discovery.  The

26  fourth issue, for the reasons explained further below, requires analysis under Rule 56 that cannot

27  be conducted until plaintiff has had the opportunity to conduct discovery.

28  ////

1          A. Standards Under Fed. R. Civ. P. 56

2          Summary judgment is appropriate when the moving party "shows that there is no genuine

3  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4  Fed.R.Civ.P. 56(a).  Under summary judgment practice, the moving party "initially bears the

5  burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities

6  Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323,

7  (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the

8  record, including depositions, documents, electronically stored information, affidavits or

9  declarations, stipulations (including those made for purposes of the motion only), admission,

10  interrogatory answers, or other materials" or by showing that such materials "do not establish the

11  absence or presence of a genuine dispute, or that the adverse party cannot produce admissible

12  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

13          When the non-moving party bears the burden of proof at trial, "the moving party need

14  only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

15  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B).

16  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

17  against a party who fails to make a showing sufficient to establish the existence of an element

18  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

19  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

20  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

21  circumstance, summary judgment should be granted, "so long as whatever is before the district

22  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

23          B. *Swarthout* and Plaintiff's Due Process Claims

24          Defendants seek summary judgment on plaintiff's federal due process claims, on grounds

25  they are precluded by Swarthout v. Cooke, 131 S.Ct. 859 (2011).  In Swarthout, the Supreme

26  Court put an end to federal habeas review of individual California parole denials for sufficiency

27  of the evidence.  The Court held that the application by the parole board of California's "some

28  evidence" standard is not substantively reviewable in habeas.  The Court did not hold that

1    California inmates lack a protected liberty interest in parole.  Indeed, the Court noted that the

2    Ninth Circuit's holding that there *is* such an interest constitutes "a reasonable application of our

3    cases."  Swarthout, 131 S.Ct. at 861.  Rather, Swarthout holds that the application of the

4    evidentiary standard for individual parole denials is a matter of state law and therefore not

5    reviewable in a federal habeas proceeding.  Id. at 862-63.  After Swarthout, federal habeas review

6    of individual parole denials is limited to consideration of whether the inmate received the benefit

7    of the procedural due process protections required under Greenholtz v. Inmates of Neb. Penal and

8    Corr. Complex, 442 U.S. 1, 16 (1979).  Id.

9        Defendants argue broadly that after Swarthout, "federal review of California state parole

10   decisions is limited to ensuring that fair procedures were employed to protect the inmate's state-

11   created liberty interest."  ECF No. 30-1 at 15.  This formulation overstates the scope of the

12   Swarthout holding, which is limited to the habeas context in which it arose.  This is not a habeas

13   case, and plaintiff does not seek to have his 2010 parole denial set aside.  Swarthout has no effect

14   on the continuing viability of Wilkinson v. Dotson, 544 U.S. 74 (2005), which holds that inmates

15   may challenge the constitutionality of state parole procedures under section 1983.  Here as in

16   Wilkinson, plaintiff challenges the process by which the state assesses parole suitability, but does

17   not seek an injunction ordering his immediate or speedier release into the community.  See id. at

18   82.  Swarthout limits federal habeas review of individual parole decisions, but does not foreclose

19   section 1983 challenges to the process by which a state assesses parole suitability.[4]  Accordingly,

20   Swarthout does not preclude the claims presented here.

21       For analogous reasons, the undersigned rejects defendants' argument that after Swarthout

22   _____

23   [4] At hearing, defendants cited rulings by two other judges of this district which rejected claims
     alleging flaws in FAD psychological assessments.  See Lyon v. Thacker, 2:11-cv-2586 EFB, ECF
24   No. 5 (screening order dismissing complaint without leave to amend); Morris v. Swarthout, 2:11-
     cv-2164 GEB JFM, ECF Nos. 18, 20 (respectively recommending and ordering denial of relief).
25   The plaintiff in Lyon sought damages and injunctive relief against the psychologist who had
     conducted his risk assessment.  The plaintiff in Morris challenged his parole denial as
26   unsupported by sufficient evidence in that it was based on an unreliable risk assessment.  Because
     these plaintiffs challenged the evidentiary basis for their individual denials of parole, their claims
27   were foreclosed by Swarthout.  The instant case is distinguishable for the reasons explained
     above.

28

                                                      10

1   the only due process claim cognizable in relation to parole is a challenge to the internal

2   procedural fairness of a particular parole hearing, as in <u>Greenholz</u>, <u>supra</u>.  <u>Greenholz</u> indeed

3   specifies the procedural protections that are required in relation to individual hearings.  But just as

4   <u>Swarthout</u> deals only with habeas, <u>Greenholz</u> deals only with the procedural protections that are

5   due in the process of making individual parole suitability determinations.  The case at bar does

6   not focus on the Board's conduct of specific individual hearings, but on the constitutionality of

7   the process by which the Board and its FAD produce psychological evaluations for use at all

8   hearings.  <u>Greenholz</u> therefore does not govern the core of this case, and does not support

9   summary judgment at this stage in the proceedings.[5]

10          Defendants argue that the previously assigned magistrate judge held that <u>Swarthout</u>

11   precludes all due process claims but for the claim the FAD procedures were intentionally created

12   to create a false evidentiary basis for parole denials.  ECF No. 30-1 at 16 (citing ECF No. 17 at

13   9:17-22).  Defendants then argue that plaintiff has conceded in discovery responses that he does

14   not allege (1) that defendants purposely contrived the FAD protocols to erroneously predict future

15   violence, or (2) that any defendant directed the FAD psychologists to make false representations

16   in the assessments.  ECF No. 30-1 at 16.  Accordingly, defendants contend that plaintiff's own

17   admissions defeat his ability to maintain this action.

18          Defendants misapprehend both the previous order in this case and the import of plaintiff's

19   discovery response.  Judge Hollows' ruling on the motion to dismiss essentially made the same

20   distinction as here, between challenges to a specific parole denial and systemic challenges to the

21   FAD process.  His example of a cognizable due process claim, in the course of granting leave to

22

---

23   [5] <u>Greenholz</u> may well govern specific causes of action, or limit aspects of some claims.  For
     example, <u>Greenholz</u> is clearly applicable to (and possibly dispositive of) plaintiff's theory that

24   BPH is constitutionally required to permit the cross-examination of FAD psychologists at parole
     hearings.  Defendants' arguments under both <u>Swarthout</u> and <u>Greenholz</u> are directed broadly at

25   plaintiff's "due process claim," however, without distinction between the twelve distinctly pled
     causes of action that are based on the Due Process Clause.  Accordingly, the briefing before the

26   court does not support a determination whether specific causes of action, or their subparts, fail as
     a matter of law.  Defendant has chosen to rely on blanket invocation of <u>Swarthout</u> and <u>Greenholz</u>

27   as grounds for summary judgment on the due process claims construed as an integrated whole.

28   For the reasons set forth above, that position should be rejected.

1   amend, did not limit plaintiff's ability to plead such a claim (or claims) comprehensively.

2   Moreover, the gravamen of the First Amended Complaint remains the assertion that the FAD

3   protocols were adopted (and operate) to create an evidentiary basis for the denial of parole by

4   generating unreliable future dangerousness findings, rendering the suitability evaluation process

5   biased and inherently unreliable.  This theory does not require that defendants set out to contrive a

6   deficient protocol; it is equally supported by plaintiff' allegations that defendants adopted the

7   protocol with knowledge of its biases and unreliability.  Plaintiff's discovery response therefore

8   does not constitute an admission that negates his claim.

9          For these reasons, defendants' blanket reliance on <u>Swarthout</u> and <u>Greenholz</u> should be

10  rejected and the motion for summary judgment on this ground should be denied.  This ruling

11  should be without prejudice to future consideration of <u>Greenholz</u> as it may apply to plaintiff's

12  individual causes of action.

13          C.  <u>Equal Protection Claim</u>

14          Plaintiff's Twelfth Cause of Action claims *inter alia* that the FAD protocol violates

15  plaintiff's equal protection rights by denying lifers the opportunity to call witnesses, including

16  adverse witnesses,[6] at parole hearings when that opportunity is afforded to parolees facing parole

17  revocation and to prisoners facing disciplinary charges.  ECF No. 18 at 23.  Defendants seek

18  summary judgment, arguing that plaintiff has failed to show that he was treated differently from

19  similarly situated inmates.

20          The equal protection clause of the Fourteenth Amendment provides that no state shall

21  "deny to any person within its jurisdiction the equal protection of the laws."  This establishes the

22  rule that "all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne</u>

23  <u>Living Center</u>, 473 U.S. 432, 439 (1985); <u>see also</u> <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992).

24  The equal protection clause forbids classifications that are inherently suspect, such as

25  classifications based on race and sex, but classification on other grounds satisfies the constitution

26

27  _____
    [6] Plaintiff is primarily concerned with lifers' inability to call FAD psychologists to testify at the
    hearings, so that the psychologists' specific findings, the reliability of the risks assessment tools
28  used, and the biases plaintiff identifies in the evaluative process can be challenged.

1    if it is rationally related to a legitimate state interest.  City of Cleburne, 473 U.S. at 440.

2           Lifers facing parole suitability hearings are not a protected class, nor are they similarly

3    situated for equal protection purposes to parolees facing revocation hearings or inmates facing

4    disciplinary charges.  In each of these contexts the issues to be decided, the identities of the

5    decision-makers, the statutory and regulatory frameworks which form the context for the

6    decisions, the standards that govern the decisions, the consequences of the decisions, and – most

7    importantly – the contours of the liberty interest at stake, are distinct.  California's decision to

8    enact different procedures for these different types of hearings cannot plausibly be considered

9    irrational.  Accordingly, plaintiff may not predicate an equal protection claim on the theory that

10   he is impermissibly treated differently than parolees and/or inmates facing disciplinary charges.

11          Defendants' motion for summary judgment on plaintiff's equal protection claim should be

12   granted.

13          D.  Eleventh Amendment And Pendent State Law Claims

14          Defendants seek summary judgment on plaintiff's state law claims, on Eleventh

15   Amendment grounds.  The Eleventh Amendment bars federal courts from enjoining state officials

16   to conform their conduct to state law.  Pennhurst State School & Hosp. v. Halderman, 465 U.S.

17   89 (1984).  This lawsuit seeks exclusively injunctive relief against state actors in their official

18   capacities.  Causes of Action Thirteen through Sixteen are based on California law.  Plaintiff

19   concedes in his post-hearing letter brief, as he must, that Pennhurst precludes relief on these

20   claims.  See ECF No. 38 at 2.  Accordingly, the motion for summary judgment should be granted

21   as to plaintiff's state law causes of action.

22          E.  Other Grounds For Summary Judgment

23          Defendants seek summary judgment on plaintiff's core due process claims on grounds that

24   plaintiff has failed to overcome the presumption that the BPH acted with fairness and integrity in

25   developing the FAD protocol.  This amounts to an argument that plaintiff has failed "to make a

26   showing sufficient to establish the existence of an element essential to that party's case."  Celotex,

27   477 U.S. at 322.  Summary judgment is appropriate in such circumstances only after adequate

28   time for discovery.  Id.  As explained above, there not been an adequate opportunity for plaintiff

13

1  to conduct discovery in this case.  Because discovery will be re-opened following a final ruling on

2  the purely legal questions presented by the pending motions, summary judgment on this ground

3  should be denied without prejudice to a renewed motion following the close of discovery.

4        IV.     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

5        Plaintiff seeks an order certifying this case as a class action under Fed. R. Civ. P. 23(b)(2).

6  The proposed class consists of California state prisoners who are serving life sentences and are

7  eligible for parole consideration after having served their minimum terms.  Defendants oppose the

8  motion.  At hearing on the motion, both parties agreed with the undersigned that there is no need

9  for discovery going to the propriety of class certification.  Accordingly, the motion is appropriate

10  for adjudication at this time.

11        A.  Standards for Class Certification

12        A party seeking to certify a class must demonstrate that it has met all four requirements of

13  Rule 23(a) and at least one of the requirements of Rule 23(b).  Zinser v. Accufix Research Inst.,

14  Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified

15
16
17
18
> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

19  Fed. R. Civ. P. 23(a).  In other words, the class must satisfy the requirements of numerosity,

20  commonality, typicality, and adequacy.

21        Rule 23(b) provides for three types of class actions.  Fed. R. Civ. P. 23(b).  Here, plaintiff

22  seeks to certify the class under Rule 23(b)(2), which allows for a class to be certified if "the party

23  opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

24  making appropriate final injunctive relief or corresponding declaratory relief with respect to the

25  class as a whole."  Fed. R. Civ. P. 23(b)(2).

26        The court must conduct a "rigorous analysis" of the moving party's claims to examine

27  whether the requirements are satisfied.  Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161

28  (1982).  Generally, the court should not consider whether the party seeking class certification has

14

1    stated a cause of action or is likely to prevail on the merits.  Eisen v. Carlisle & Jacquelin, 417

2    U.S. 156, 178 (1974).  Nevertheless, the court may consider such evidence, when applicable, even

3    if the evidence may also relate to the underlying merits of the case.  Hanon v. Dataproducts Corp.,

4    976 F.2d 497, 509 (9th Cir. 1992).  If the court concludes that the moving party has met its

5    burden of proof, the court has broad discretion to certify the class.  Zinser, 253 F.3d at 1186.

6        B.   Whether Certification Is "Premature"

7        The court must rule on a motion to certify a class as "soon as practicable after the

8    commencement of an action brought as a class action."  Fed. R. Civ. P. 23(c)(1).  The timing

9    provision is not absolute, however, and the court has the discretion to defer ruling on certification

10   until after a summary judgment motion has been adjudicated.  Wright v. Schock, 742 F.2d 541,

11   543-44 (9th Cir. 1984).  Defendants argue that class certification is premature in this case, but

12   merely point to the fact that a class certification motion and a motion for summary judgment were

13   filed on the same day.  ECF No. 33 at 5.  Because most of the complaint survives summary

14   judgment for the reasons already discussed, this fact provides no basis for deferral of the

15   certification motion.

16       Moreover, this is not a case in which class certification or the certification decision itself

17   should follow discovery.  The propriety of certification here does not turn on the resolution of

18   disputed facts or require the development of evidence; both parties rely entirely on the allegations

19   of the complaint for their arguments regarding the propriety of certification.  Moreover, as noted

20   above in discussion of scheduling, a ruling on certification prior to the reopening of discovery

21   will clarify the scope of discovery and assist resolution of any related disputes.  For all these

22   reasons, certification is not premature.

23       C.   Requirements Under Rule 23(a)

24           1.   Numerosity

25       The complaint states that roughly 10,000 California life prisoners have served their

26   minimum terms and are therefore eligible for parole and subject to the FAD protocol.  Defendants

27   do not dispute that the numerosity requirement is satisfied.

28   ////

1          2.  Commonality

2          Commonality exists when "there are questions of law or fact common to the class."  Fed.

3   R. Civ. P. 23(a)(2).  Rule 23(a)(2) does not require that every or all questions of fact or law be

4   common or identical.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  In a civil

5   rights suit, the commonality requirement is satisfied where the suit challenges a "system-wide

6   practice or policy that affects all of the putative class members."  Armstrong v. Davis, 275 F.3d

7   849, 868 (9th Cir. 2001), cert. denied, 537 U.S. 812 (2002).  Thus, commonality may exist where

8   there is a common legal issue with varied factual predicates.  Hanlon, 150 F.3d at 1019-20.

9          Here, plaintiff alleges that all class members were subjected to the same unconstitutional

10  practices.  Because plaintiff does not challenge the outcomes of any parole suitability

11  determinations, the individualized balancing of factors inherent in those determinations is not

12  directly at issue in this suit.  Of course, the experiences of individual plaintiffs will likely be

13  relevant to prove that the FAD protocol produces unreliable results, and the differences between

14  the experiences and histories of named and unnamed plaintiffs may make it difficult for plaintiff

15  to make this showing.  However, the alleged injuries and legal theories are the same across the

16  class.

17         In Armstrong, the Ninth Circuit affirmed certification of a class of disabled life prisoners

18  who challenged the accommodations provided by BPH at and in relation to parole hearings.  The

19  court rejected the argument that the different types of disability experienced by the class members

20  – hearing impairments, visual impairments, mobility impairments, developmental disabilities and

21  learning disabilities – defeated commonality.  The court reasoned that differences among the

22  individual litigants did not preclude a finding of commonality because all plaintiffs challenged a

23  single system-wide policy or practice affecting all putative class members.  Armstrong, 275 F.3d

24  at 868.  The same analysis applies here.

25         Defendants argue that a different result is required under Wal-Mart Stores, Inc. v. Dukes,

26  131 S.Ct. 2541 (2011).  The Wal-Mart case is inapposite.  Commonality was lacking in that sex

27  discrimination case precisely because the plaintiffs were not attacking an official system-wide

28  policy or practice.  The putative class members, one and a half million female employees of the

16

1  national retailer, sought to proceed on a theory that the employment decisions made on a

2  discretionary basis by their individual supervisors reflected an unwritten "policy" of sex

3  discrimination.  Under those circumstances, the Court held that certification was inappropriate in

4  the absence of "significant proof" that the alleged discriminatory policy existed.  Wal-Mart, 131

5  S.Ct. at 2553.  Wal-Mart does not mean, as defendants insist, that plaintiff must prove that the

6  FAD protocol is biased in order to establish commonality.[7]  The existence of the FAD protocol

7  itself, and its application to every parole-eligible life prisoner, are not in question.  Accordingly,

8  both the legal question presented and the answer to be generated by litigation are the same with

9  regard to all class members.  See id. at 2551.  Armstrong and not Wal-Mart therefore governs the

10  commonality analysis here.

11                          3.  Typicality

12        Typicality requires that "the claims or defenses of the representative parties are typical of

13  the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  As such, it substantially overlaps

14  with the test for commonality.  For typicality to be met, named plaintiffs' claims need not be

15  identical to those of the putative class members.  Hanlon, 150 F.3d at 1020.  Instead, plaintiffs'

16  claims need only be "reasonably coextensive" with the claims of the putative class.  Id.  The

17  inquiry focuses on the claims themselves, not on the factual predicates from which the claims

18  arise.  Hanon, 976 F.2d at 508.  "The test of typicality 'is whether other members have the same

19  or similar injury, whether the action is based on conduct which is not unique to the named

20  plaintiffs, and whether other class members have been injured by the same course of conduct.'"

21  Id.

22        All class members are subject to the same parole determination process.  The complaint

23  specifically alleges that plaintiff's counsel has been contacted by numerous putative class

24  members who have been subject to the FAD protocols and who have been injured in the same

25  way as plaintiff Johnson.  Because plaintiff has alleged system-wide practices, his alleged injuries

26  are necessarily typical of those of unnamed class members.  Defendants make no argument to the

27

28  [7] Nor could plaintiff reasonably be expected to do so without having conducted discovery.

1    contrary.

2                        4.   Adequacy of Representation

3           Adequacy of representation requires that "representative parties will fairly and adequately

4    protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for plaintiffs to adequately

5    represent the putative class members, they must demonstrate, first, that they do not possess any

6    conflicts of interest with the class members and, second, that both plaintiffs and their counsel will

7    work to "prosecute the action vigorously" with respect to the entire class.  Stanton, 327 F.3d at

8    957.

9           Defendants contend that plaintiff Johnson is not an adequate class representative because

10   he was member of the petitioner class in In re Rutherford, No. SC13599A (Superior Court for

11   Marin County).  The Rutherford case preceded BPH's adoption of the FAD protocol, and

12   challenged the BPH's backlog of delayed and overdue hearings.  Those delays were caused in

13   part by the failure of CDCR clinicians to produce timely psychological assessments for suitability

14   hearings.  According to defendants, the FAD assessment process was developed and adopted as

15   part of the remedy ordered by the Rutherford court, and therefore cannot be challenged by a

16   Rutherford class member under principles of judicial estoppel.

17          Plaintiff has provided excerpts of the Rutherford record to counter this argument, together

18   with a declaration of counsel.  Plaintiff Johnson's attorney in this case, Keith Wattley, also

19   represented the petitioner class in Rutherford.  Plaintiff Johnson argues first that he was not a

20   member of the Rutherford class, as he was not yet eligible for parole at the time that class was

21   certified and therefore did not come within the class definition.  Plaintiff's supporting documents

22   confirm this representation.  Even if plaintiff had been a Rutherford class member, however, that

23   fact would not defeat his adequacy as a class representative in this action because there is no

24   conflict between the interests or obligations of the two classes.

25          Review of the record in Rutherford[8] confirms that the substance of the FAD protocols was

26   neither ordered by nor approved by the Rutherford court, and that the issues presented in plaintiff

27   ────────────────

28   [8] See ECF Nos. 36-1 through 36-7 (submitted by plaintiff) and ECF No. 30-3 (submitted by
     defendants).

1    Johnson's complaint fall outside the scope of the Rutherford litigation.  Rutherford was certified

2    as a class action on November 29, 2004, six months after the individual habeas petition was filed.

3    On February 15, 2006, the court granted the petition and the parties entered into negotiations

4    regarding a remedial plan to eliminate the parole hearing backlog.  The keystone of the remedial

5    plan was the Lifer Scheduling and Tracking System ("LSTS"), which was created and

6    implemented by stipulation.  At the same time that the LSTS was being developed, the Board

7    explored creation of a lifer psychological evaluation program that would facilitate the effort to

8    provide timely hearings.  Respondents committed themselves as part of the remedial plan to

9    develop such a program, but actual program development proceeded unilaterally rather than by

10   agreement with petitioners.  Indeed, respondents denied any obligation to meet and confer

11   regarding the new psychological assessment protocol.  ECF No. 36-6 at 3.  Petitioners objected

12   during the course of the Rutherford litigation to various aspects of the new regime as it was

13   developed and implemented.  The Rutherford court agreed with respondents that the particulars of

14   the new program did not require plaintiffs' input or court approval.  At a hearing on May 10,

15   2007, the judge specifically ruled that respondents' selection of a particular risk assessment tool

16   was beyond the scope of the remedial plan.  She noted, "Obviously, if a risk assessment tool is

17   used that denies procedural or substantive due process to any prisoner, that's going to be the

18   subject of a separate application or proceeding, but the purview of this one is the timeliness of

19   parole hearings."  ECF No. 36-7 at 23.

20           The instant action is clearly the successor to Rutherford.  Nothing about the  positions

21   taken by the Rutherford petitioners in that action, nor any stipulation or ruling binding on the

22   Rutherford class, conflicts with the claims in this case or the interests of putative class members.

23   To the contrary, the interests of the two classes are closely aligned.  Moreover, the fact that

24   plaintiff's counsel in this case represented the Rutherford class supports a finding that he will

25   "prosecute th[is] action vigorously" with respect to the entire class.  Stanton, 327 F.3d at 957

26   (noting counsel's successful prior advocacy on behalf of class members).  Counsel's familiarity

27   with parole issues generally, and more specifically with the history leading to the development of

28   the FAD, suggests that he is in an excellent position to prosecute this action in the interests of the

19

1 | class.

2 |     For all these reasons, the undersigned finds that plaintiff Johnson is an adequate class

3 | representative.

4 |     D.  Requirements Under Rule 23(b)(2)

5 |     The analysis of Rule 23(b)(2) overlaps with the factors in Rule 23(a).  Rule 23(b)(2)

6 | requires that "the party opposing the class has acted or refused to act on grounds that apply

7 | generally to the class, so that final injunctive relief or corresponding declaratory relief is

8 | appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Here, plaintiff alleges an

9 | overarching policy that applies to all class members.  Therefore, plaintiff's allegations satisfy this

10 | requirement.  The injunctive relief sought by plaintiffs would apply to the class as a whole.  The

11 | claims in this suit would not entitle named or unnamed class members to any form of

12 | individualized injunctive relief.

13 |     E.  Conclusion

14 |     For the reasons explained above, class certification is appropriate.  An identical class was

15 | certified in another case in this district that challenged the constitutionality of generally applicable

16 | parole consideration procedures.  See Gilman v. Schwarzenegger, 2:05-cv-0830 LKK, ECF No.

17 | 182 (Order filed 03/04/08), aff'd, 382 Fed. Appx. 544 (9th Cir. 2010).  The instant case is not

18 | materially distinguishable.  Accordingly, the undersigned recommends certification of the class

19 | pursuant to Rule 23(b)(2).

20 |     It is **HEREBY ORDERED** as follows:

21 |     1.  Plaintiff's motion to compel discovery responses (ECF No. 25) is construed as a

22 |         motion to reopen discovery and as such is granted in part;

23 |     2.  The court declines to order responses to plaintiff's previously propounded discovery

24 |         requests, but will set a new schedule for discovery and dispositive motions following

25 |         the district court's ruling on the Findings and Recommendation that follow;

26 |     3.  Within 14 days of the district court's ruling on the Findings and Recommendations

27 |         regarding class certification and defendants' motion for summary judgment, the

28 |         parties shall file status reports (preferably, a joint status report) addressing the

following:

   a.  Service of process;

   b.  Possible joinder of additional parties;

   c.  Any expected or desired amendment of the pleadings;

   d.  Jurisdiction and venue;

   e.  Anticipated motions and their scheduling;

   f.  The report required by Fed. R. Civ. P. 26 outlining the proposed discovery plan and its scheduling, including the disclosure of expert witnesses;

   g.  Future proceedings, including setting appropriate cut-off dates for discovery and law and motion, and the scheduling of a pretrial conference and trial;

   h.  Special procedures, if any;

   i.  Estimated trial time;

   j.  Modification of standard pretrial procedures specified by the rules due to the simplicity or complexity of the proceedings;

   k.  Whether the case is related to any other cases;

   l.  Whether a settlement conference should be scheduled;

   m.  Whether counsel will stipulate to the magistrate judge assigned to this matter acting as settlement judge and waiving disqualification by virtue of her so acting, or whether they prefer to have a settlement conference before another judge;

   n.  Any other matter that may add to the just and expeditious disposition of this matter;

4.  The status report(s) shall notice a status conference for hearing on Magistrate Judge Claire's regular law and motion calendar on the earliest available date.

It is **HEREBY RECOMMENDED** that:

1.  Petitioner's motion for class certification (ECF No. 29) be granted;

2.  Defendant's motion for summary judgment (ECF No. 30) be granted in part and denied in part as follows:

   a.  Granted as to plaintiff's equal protection and pendent state law claims;

1      b.  Denied as to plaintiff's due process claims insofar as defendants rely on <u>Swarthout</u>

2      <u>v. Cooke</u>, 131 S.Ct. 859 (2011); and

3      c.  Denied in all other respects without prejudice to renewal following close of

4      discovery.

5      These findings and recommendations are submitted to the United States District Judge

6 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7 after being served with these findings and recommendations, any party may file written

8 objections with the court and serve a copy on all parties.  Such a document should be captioned

9 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10 objections shall be filed and served within fourteen days after service of the objections.   The

11 parties are advised that failure to file objections within the specified time may waive the right to

12 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13 DATED: October 31, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

22