1  KEITH WATTLEY, SBN 203366
2  UnCommon Law
   220 4th Street, Suite 103
3  Oakland, CA 94607
   Telephone:  (510) 271-0310
4  Facsimile:  (510) 271-0101
5  Email: kwattley@uncommonlaw.org

6  Attorney for Plaintiff
7  SAM JOHNSON

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11

12                                    )
13  SAM JOHNSON, et al.,              )  **Case No.: 2:12-cv-1059 KJM**
                                      )
14              Plaintiffs,           )  **PLAINTIFFS' OPPOSITION TO**
                 v.                   )  **DEFENDANTS' MOTION FOR**
15                                    )  **JUDGMENT ON THE PLEADINGS**
16  JENNIFER SHAFFER, et al.,         )
                                      )  Date:        November 7, 2014
17              Defendants            )  Time:        10:00 a.m.
18                                    )  Courtroom:   3
                                      )  Judge:       Hon. Kimberly J. Mueller
19                                    )  Action filed:  April 20, 2012
20                                    )
21  _____

22

23

24

25

26

27

28                        1
───────────────────────────────────────────
Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ........................................................................................ 3

INTRODUCTION ......................................................................................................... 4

LEGAL STANDARD ................................................................................................... 7

ARGUMENT ................................................................................................................. 8

    I.     THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
         PROTECTS PLAINTIFFS FROM AN ADJUDICATORY PROCESS
         INFECTED WITH SYSTEMIC BIAS…………………………………………..8

    II.    ALL DEFENDANTS AND THEIR SUCCESSORS IN OFFICE
         REMAIN IN THE CASE IN THEIR OFFICIAL CAPACITY…………..……16

CONCLUSION ................................................................................................ .....17

---

2

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

# TABLE OF AUTHORITIES

**Federal Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544..................................................................9, 14, 15

*Gibson v. Berryhill*, 411 U.S. 564 ............................................................................. 11

*Gilman v. Brown* (E.D. Cal. May 31, 2012) CIV. S-05-830 LKK, 2012 WL 1969200.............. 12

*Graham v. Florida*, 560 U.S. 48 ........................................................................... 12, 13

*Greenholtz v. Inmates of Neb. Penal & Correctional Complex* (1979) 442 U.S. 1................. 7, 10

*Griffin v. Illinois*, 351 U.S. 12 (1956)........................................................................ 10

*In re Murchison*, 349 U.S. 133 ......................................................................... 11, 13

*Jaspar v. Khoury*, 2011 U.S. Dist. LEXIS 63790 (E.D. Cal. 2011) ...................................... 8

*Knappenberger v. City of Phoenix*, 556 F.3d 936, 939 (9th Cir. 2009)................................. 8

*Liteky v. United States*, 510 U.S. 540 ....................................................................... 15

*Marshall v. Jerrico, Inc.* 446 U.S. 238 .................................................................. 11, 13

*McGary v. City of Portland*, 386 F.3d 1259 .............................................................. 9, 14

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 ............................................................... 8

*Miller v. Alabama*, 132 S. Ct. 2455 ......................................................................... 13

*Roe v. Wade*, 410 U.S. 113 ................................................................................. 10

*Stivers v. Pierce*  71 F.3d 739, 741 (9th Cir. 1995) .................................................... 13

*Swarthout v. Cooke* ( 2011) 131 S. Ct. 859 ......................................................7, 10, 12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 ................................................................. 8

*Tumey v. Ohio*, 273 U.S. 510, 532(1927) ................................................................. 11

*William Jefferson & Co., Inc. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange County*,

  2012 WL 3711714, *3 (9th Cir. Aug. 29, 2012)......................................................... 11

*Withrow v. Larkin*, 421 U.S. 35 ....................................................................11, 13, 15

**State Statutes**

Cal. Pen. Code, § 3041................................................................................... 3, 13

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

KEITH WATTLEY, SBN 203366
UnCommon Law
220 4th Street, Suite 103
Oakland, CA 94607
Telephone:  (510) 271-0310
Facsimile:  (510) 271-0101
Email: kwattley@uncommonlaw.org

Attorney for Plaintiff
SAM JOHNSON

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM JOHNSON, et al., | **Case No.: 2:12-cv-1059 KJM** |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| JENNIFER SHAFFER, et al., | |
| Defendants | Date:        November 7, 2014 |
| | Time:        10:00 a.m. |
| | Courtroom:     3 |
| | Judge:        Hon. Kimberly J. Mueller |
| | Action filed:   April 20, 2012 |

## INTRODUCTION

The California statute giving rise to a constitutionally protected liberty interest in parole for those serving life sentences (Cal. Pen. Code, § 3041) mandates that parole be granted at a prisoner's very first consideration hearing absent exceptional circumstances. Doc. 18 at 5, 22.  However, despite the mandate that parole ***normally*** be granted when eligible prisoners first become eligible, fewer than 1% are actually granted parole at their

4

initial parole hearings, and barely 20% are granted parole at any subsequent hearings.  *Id*. Defendants have implemented policies making parole a virtual impossibility, particularly for prisoners first appearing before the parole board.

Defendants developed the FAD Protocol after finding its psychologists incapable of predicting risk and assessing insight, after finding that psychological evaluations are unnecessary and being used improperly, and after its expert consultants advised against it. In the end, the Board developed the protocol using assessment tools disproportionately weighted toward historical and unchanging factors and then covered its team of psychologists in a shroud of secrecy, thereby making it impossible to challenge their technically invalid, biased predictions of dangerousness.  Doc. 18 at 2, 5-10.

The Plaintiff class alleges that Defendants' FAD protocol exemplifies an unfair bias against prisoners being considered for parole, particularly in their initial hearings, and that this bias violates due process under the Fourteenth Amendment.  The complaint highlights the following conduct by Defendants: (1) acting with a clear and unlawful bias against granting parole, as reflected by a sub-1% rate of granting parole at initial hearings notwithstanding the statutory mandate to *normally* grant parole; (2) forbidding prisoners from meeting with, questioning or investigating FAD psychologists once their reports are written (including denying a limited right to confront and cross examine these putative experts in the hearings themselves); (3) relying on actuarial assessments and other evidence lacking sufficient indicia of reliability and validity in predicting a prisoner's risk to public safety; (4) refusing to provide prisoners with the raw data underlying the conclusions and diagnoses in FAD evaluations; (5) refusing to record and transcribe psychological interviews to facilitate fair and expeditious resolution of alleged errors; (6) failing to establish consistent standards for interpreting raw scores; and (7) refusing to conduct any meaningful review of objections to FAD evaluations (including failing to follow their own written policy for rejecting faulty evaluations).  *Id*. at 16-26.

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

Defendants' motion for judgment on the pleadings alleges that the First Amended Complaint fails to state any federally cognizable claims for relief because all of the claims therein are foreclosed by the Supreme Court's opinions in *Greenholtz v. Inmates of Neb. Penal & Correctional Complex* (1979) 442 U.S. 1 and *Swarthout v. Cooke* ( 2011) 131 S. Ct. 859, 862 because those opinions do not explicitly require Defendants to protect Plaintiffs from the abuses set forth above.  However, Defendants' efforts to reframe the gravamen of Plaintiffs' complaint are misguided, as those efforts have distracted Defendants from considering some fundamental aspects of one's liberty interest protected by due process.  Most relevant is the fact that Defendants make no attempt whatsoever to reconcile the numerous Supreme Court precedents, left undisturbed by *Greenholtz* and *Swarthout*, that protect against biased decisionmaking by permitting bias claims under the Fourteenth Amendment in federal court.  Their attempt to re-package arguments this Court has already rejected must fail.

Defendants also contend that the First Amended Complaint seeks only prospective injunctive and declaratory relief and that, therefore, all Defendants except the Governor and the Board's Executive Officer should be dismissed.  However, it is axiomatic that a plaintiff can obtain declaratory and injunctive relief against any defendant acting in a quasi-judicial capacity when their conduct is unconstitutional, and Defendants can provide relief here.[1]  It is also not true that plaintiffs seek only *prospective* injunctive relief.  In fact, they seek the removal of patently unreliable psychological evaluations from their prison files.  See FAC, Doc. 18, at 27.

The issue presented by Defendants' motion for judgment on the pleadings is whether the moving party has clearly established that no material issue of fact remains to be resolved, and therefore, the Defendants are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 12(c).  Because the First Amended Complaint far exceeds

---

[1] Plaintiffs are well aware of the transient nature of state employment.  Defendants are all sued in their official capacity.  Their successors in office are thus equally bound by the Court's judgment in this matter.

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al.*, No. 2:12-cv-1059 KJM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the federal pleading standards for this early stage of the proceedings, and because the Court must accept Plaintiff's factual allegations as true, the Court must deny Defendants' motion for judgment on the pleadings and allow the case to proceed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Knappenberger v. City of Phoenix*, 556 F.3d 936, 939 (9th Cir. 2009) (citation omitted).

The standard applied on a motion for judgment on the pleadings is equivalent to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, *e.g., McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). "When ruling on a motion to dismiss, [a court] accept[s] all factual allegations in the complaint as true[,] … construe[s] the pleadings in the light most favorable to the nonmoving party," and "draws all reasonable inferences in favor of the plaintiff." *Ass'n for L.A. Deputy Sheriffs v. County of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). With these facts and inferences in mind, dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Id.*

The pleadings stage does not require evidence or proof that any particular fact or claim is true. Fed. R. Civ. Pro. 8. Instead, a liberal pleadings standard allows for ample discovery, after which unmeritorious claims are disposed of through summary judgment. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Jaspar v. Khoury,* 2011 U.S. Dist. LEXIS 63790 (E.D. Cal. 2011).

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

1    Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only set forth "a short
2  and plain statement of the claim showing that the pleader is entitled to relief."  However,
3  courts do not require Plaintiffs to produce all specifics of a cause of action at the pleading
4  stage, but only to produce enough facts that – if proven at trial – could comprise a claim to
5  relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).
6  In the pre-discovery phase of litigation, a complaint must only "allege facts *suggestive* of
7  illegal conduct."  *Id.* at 563 (emphasis added).  "The issue is not whether the claimant will
8  ultimately prevail but whether the claimant is entitled to offer evidence to support the
9  claims." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).  Plaintiff's
10 complaint far exceeds these federal pleading standards.

## ARGUMENT

## I.

## THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT PROTECTS PLAINTIFFS FROM AN ADJUDICATORY PROCESS INFECTED WITH SYSTEMIC BIAS.

15    As Defendants concede, the Court denied their motion for summary judgment
16 because they relied on a "blanket invocation of *Swarthout* and *Greenholtz* (sic)."  Doc. No.
17 55, at 2.  Defendants have once again relied on *Swarthout* and *Greenholtz* to support their
18 motion for judgment on the pleadings, but they have attempted to re-frame each claim in
19 Plaintiffs' complaint as an attempt to "expand the process due to life inmates" or to
20 "circumvent the Supreme Court's holding that California's parole process does not create
21 any federal substantive due process right in the parole context."  Doc. 55, at 2-3.  The fatal
22 flaw in Defendants' approach, however, is that they cannot overcome the Constitutional
23 prohibition against biased decisionmakers.  The conduct and knowledge attributed to
24 Defendants in the First Amended Complaint establish systemic bias on the part of these
25 decisionmakers.  Defendants' issue-by-issue invocation of *Greenholtz* and *Swarthout*
26 cannot insulate their wrongdoing from Plaintiffs' Fourteenth Amendment Due Process
27 attack.

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

Considering whether each individual assignment of error in the FAD protocol implicates a specific component of due process *explicitly* recognized in *Greenholtz* and *Swarthout* is not a useful enterprise.  Clearly, the Supreme Court has a history of recognizing previously unspecified rights when necessary to give meaning to a fundamental liberty interest.  See, e.g., *Griffin v. Illinois*, 351 U.S. 12 (1956) (recognizing an indigent defendant's right to a free trial transcript where the state voluntarily created a system of appellate review); *Roe v. Wade*, 410 U.S. 113, 153 (1973) (finding that "liberty" includes a right of personal privacy and that such right includes the right to an abortion).  This Court must find that the various aspects of the FAD Protocol – when taken as a whole – create an unfair process that is unconstitutional because it denies Plaintiffs a meaningful opportunity for release, particularly in their initial hearings.[3]

Defendants contend that Plaintiff Johnson's parole hearing satisfied due process because he received the procedural protections identified in *Swarthout* and *Greenholtz* – notice, an opportunity to be heard and a statement of the reasons parole was denied.  Doc. No. 55, at 2-3, 6-7, citing *Swarthout*, *supra*, 131 S. Ct. at 862 and *Greenholtz*, *supra*, 442 U.S. at 16.  Defendants specifically claim that Plaintiffs' challenge to the Board's unlawful FAD protocol lacks merit because "Johnson has no federally protected liberty interest in the process that the Board has chosen to conduct risk assessments," as it is outside the scope of the minimal due process protections required by the Supreme Court.  Doc. No. 55, at 7.  Therefore, according to Defendants, each particular component of the risk assessment process – no matter how biased or unreliable – cannot have violated Johnson's federal due process.  While federal due process jurisprudence has not directly contemplated risk assessments in the parole context, federal due process nevertheless includes protection

---

[3] Indeed, the Court need not determine whether each of the individual assertions of error – on its own – implicates a right expressly recognized by the Supreme Court.  Rather, the Court should first hold that the FAD Protocol – as currently implemented – yields biased and unreliable results, and then the Court should fashion a remedy that considers whether any of the existing components of the FAD Protocol must be removed or replaced in order to provide sufficient protection against abuse.

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

1   against biased decision-making.  It is clear that the various components of the FAD

2   protocol, taken as a whole, constitute evidence of the Board's bias against granting parole.

3   The inherent unfairness in the process is palpable.

4          The Supreme Court has long held that bias in *any* "court," "tribunal," or

5   "administrative agency which adjudicates," is a Fourteenth Amendment due process

6   violation because "a fair trial in a fair tribunal is a basic requirement of due process.'"

7   *Withrow v. Larkin*, 421 U.S. 35, 46 (1975), citing *In re Murchison*, 349 U.S. 133, 136

8   (1955).  This rule "applies to administrative agencies which adjudicate as well as to courts."

9   *Id.* at 47, citing *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).  As the Supreme Court has

10  observed:

11          Not only is a biased decisionmaker constitutionally unacceptable
            but 'our system of law has always endeavored to prevent even
12          the probability of unfairness.' [  ] In pursuit of this end, various
            situations have been identified in which experience teaches that
13          the probability of actual bias on the part of the judge or
            decisionmaker is too high to be constitutionally tolerable.
14

15  *Withrow*, *supra*, 421 U.S. at 47, citing *Murchison, supra,* 349 U.S., at 136; cf. *Tumey v.*

16  *Ohio*, 273 U.S. 510, 532(1927).  Following *Withrow*, the Ninth Circuit has recognized that

17  adjudicatory bias is a due process violation:  "It is axiomatic that '[a] fair trial in a fair

18  tribunal is a basic requirement of due process.'"  *William Jefferson & Co., Inc. v. Bd. of*

19  *Assessment & Appeals No. 3 ex rel. Orange County*, 2012 WL 3711714, *3 (9th Cir. Aug.

20  29, 2012), citing *Withrow*, *supra*, 421 U.S. at 47.  Indeed, "'justice must satisfy the

21  appearance of justice.'"  *Id.*, citing *Marshall v. Jerrico, Inc.* 446 U.S. 238, 243 (1980).

22  Defendants have already conceded in another case in this Court that a parole hearing would

23  violate due process if it were presided over by officers with an unconstitutional bias:  "in

24  order to be constitutionally sufficient, a parole eligibility hearing must be presided over by

25  unbiased officials."  *Gilman v. Brown* (E.D. Cal. May 31, 2012) CIV. S-05-830 LKK, 2012

26  WL 1969200, *4.

27

28
                                          10

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The First Amended Complaint alleges systemic bias against granting parole, particularly when indeterminately-sentenced prisoners first appear for their hearings.  It alleges further that Defendants' enforcement of the FAD protocol not only embodies that bias but does so in a clandestine way: their unqualified staff members utilize unreliable, invalid tools to produce reports containing misleadingly elevated predictions of risk and then they protect the whole process from any meaningful external scrutiny.  The resulting outcome – a parole grant rate for initial hearings below 1% and a sub-20% grant rate for subsequent hearings when the constitutional mandate is for *normally* granting parole – could not be a clearer example of this bias.  Plaintiffs having thus sufficiently alleged bias in the FAD protocol as a whole, each component of the protocol must be scrutinized in order to root out its inherent bias.

Defendants contend that the FAD protocol, even if flawed, unreliable and biased, is just one piece of evidence the Board relies on in making its parole decision.  According to Defendants, *Swarthout* forecloses the federal courts from weighing the evidence used to deny prisoners parole.  Doc. No. 55, at 13, citing *Swarthout*, *supra*, 131 S. Ct. at 863.  However, the risk assessments are not as insignificant as the Defendants have characterized them to be.  In fact, a prisoner's risk assessment is perhaps the single most important piece of evidence that the Board relies on to deny parole:  A prisoner with a current, overall "high risk" rating in his or her report will always be denied parole.

Defendants' demonstrable bias against granting parole, particularly in initial parole hearings, through the use of its FAD protocol deprives Plaintiffs of "a meaningful hearing" in violation of due process.  See *Gilman*, *supra*, 2012 WL 1969200, at *4.  The Supreme Court supports this.  See *Graham v. Florida*, 560 U.S. 48, 75 (2010) ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"); *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012).  This court must have the ability to review and reform the FAD protocol

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

so as to provide a meaningful opportunity for release for life term prisoners—otherwise, their liberty interest in parole is completely illusory.

To describe the essence of Defendants' position is to demonstrate its absurdity: Under their analysis of Supreme Court precedent (excluding, as they do, every opinion *except Greenholtz* and *Swarthout*), the state could lawfully do the following:  (1) notify a prisoner that its parole commissioners will conduct a hearing but will definitely deny him parole, (2) tell the prisoner that the commissioners will base their decision denying him parole on reports that are invalid and unreliable in predicting his risk to the public, (3) notify him that he will be kept in prison forever based solely on these invalid reports and (4) tell him that there is no way to challenge either the reports or the Board's reliance on them.  In other words, the Board's bias in denying parole could be *explicit*, and Defendants would contend that this Court has no authority to right such a wrong.  Clearly, the Supreme Court does not agree with Defendants on this point.  See *Withrow*, *supra*, 421 U.S. at 46; *Murchison*, *supra*, 349 U.S. at 136; *Marshall*, *supra*, 446 U.S. at 243; *Graham*, *supra*, 560 U.S. at 75.  Fundamental notions of fairness and, indeed, the very *essence* of due process forbid such decision making.

While Defendants reluctantly concede that California inmates have a right to an unbiased parole hearing panel, they assert that Plaintiffs failed to state a bias claim because the complaint "does not allege that the panel members prejudged his case, or that the panel members relied on knowledge outside the proceedings or displayed any type of antagonism that rendered fair judgment impossible."  Doc. No. 55, at 11, citing *Stivers v. Pierce*  71 F.3d 739, 741 (9th Cir. 1995).  However, as Defendants also concede, this Court has already determined that Plaintiffs could set forth a cognizable due process claim regarding a "systemic problem" with the psychological risk assessments if they could show that Defendants knowingly adopted invalid risk assessment instruments that provide a false evidentiary basis for the Board's commissioners to deny parole.  Doc. No. 55, at 14; see also

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

Doc. No. 17 at 9:17-22.  Defendants allege that Plaintiffs have failed to state such a claim. This contention lacks merit.[4]

In the pre-discovery phase of litigation, a complaint must only "allege facts *suggestive of illegal conduct.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). "The issue is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).  By this standard, Plaintiffs are clearly entitled to discovery to prove that Defendants knowingly adopted invalid risk assessment instruments and that they provide a false evidentiary basis for the Board commissioners to deny parole.

In her Findings and Recommendations, Magistrate Judge Claire summarized Plaintiff Sam Johnson's First Amended Complaint as follows:

> In the spring of 2007, BPH issued a memo forbidding prison-based staff psychologists from conducting lifer evaluations and requiring a newly constituted FAD team to handle all of them […] because evaluations prepared by prison-based clinicians were too often favorable to prisoners and too frequently supported judicial rejections of BPH decisions denying parole.

> … In August 2006, BPH convened a panel of forensic psychologists and other experts to assess the validity of [the risk assessment tools] for use in California's parole consideration process. **The invited experts advised against use of these tools, on grounds they are scientifically unreliable and have not been validated for predicting violence among long-term prisoners like California lifers**.

> BPH mandated the use of these tools despite this expert advice, knowing and intending that the tools would result in unreliable findings of dangerousness and thus provide a basis for denial of parole. **BPH officials lied to the public and to the state's regulatory agency about the advice they had received from their expert consultants.**

---

[4] While Plaintiffs disagree with Defendants regarding the level of knowledge and intent necessary to demonstrate their bias, Plaintiffs are confident in their ability to prove their claims upon completion of discovery, which has yet to formally commence in this case.

13

In late 2005 and early 2006, prior to the imposition of centralized FAD evaluations, the BPH had sought to limit the focus of prison-based psychological reports to the presence or absence of mental illness. The Board discouraged assessment of "remorse" and "insight" into the commitment offenses, on grounds these were matters for the commissioners to assess rather than proper subjects of psychological reports. However, Board findings regarding lack of insight were frequently criticized in judicial opinions, particularly where they were at odds with the reports of psychologists working in the institutions. **The FAD protocol places renewed emphasis on the "clinical" evaluation of remorse and insight, despite BPH knowledge that these factors do not statistically correlate with risk in the lifer population and that clinicians are incapable of assessing such matters**. The emphasis on remorse and insight in the FAD evaluations is intended to support parole denials and insulate them from judicial review.

… In July 2010, California's Office of the Inspector General ("OIG") issued a Special Report on BPH's Psychological Evaluations. **The OIG determined that BPH has no system for tracking or otherwise monitoring the number of errors in psychological evaluations, no system for determining whether FAD psychologists are assessing higher levels of risk than were found in previous evaluations of the same prisoners, an inadequate oversight system for senior FAD psychologists to review the reports of FAD staff psychologists, and inadequate training of its psychologists.** In essence, senior psychologists routinely rubberstamp staff psychologists' reports without verifying the validity of anything written. Due to these deficiencies, the OIG was unable to conduct the kind of review requested by the California Legislature, which provides oversight for BPH appointments and operations.  Doc. No. 40, at 2-3 (emphasis added).

These contentions alone are suggestive of the Board's illegal conduct, and therefore, entitle Plaintiffs to discovery. *Twombly*, *supra*, 550 U.S. at 570.  Furthermore, Plaintiffs' claims, if true, would certainly overcome the presumption that the parole board acted with honesty and integrity in reaching their decision to deny parole.  See *Withrow*, *supra*, 421 U.S. at 47. Plaintiffs' allegations demonstrate bias on a systemic level, and not "solely on the basis of a judicial ruling alone."  *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Defendants unsuccessfully attempt to undermine Plaintiffs' systemic bias claim by alleging 1) Plaintiffs admit the risk assessment instruments provide information that "could be relevant to parole decisions"; 2) one expert psychologist stated that the panel did not

14

reach any consensus concerning the appropriateness of the risk assessment instruments in the parole consideration process; 3) the risk assessments assess a prisoner's insight level in compliance with state law; 4) the Board's low parole grant rate is insufficient to support a claim of bias; and 5) Plaintiff Johnson has not alleged facts sufficient to show that other inmates' parole denials are the result of these biased and flawed assessments, as he provides no details concerning any case other than his own.  Doc. 55, at 14-16.

First, it is fruitless for Defendants to argue that these risk assessments *could* be relevant to parole decisions hypothetically, as the Board itself convened a panel of experts who criticized these very tools in their current application.  Doc. 18, at 7-8 (quoting one convened psychologist who claimed "the LS/CMI and HCR-20?PCL-R (sic) tend to over-predict the failure rate for these [term-to-life] prisoners, classifying their risk of violence as higher than it truly is.").  Second, even if Defendants could prove that not *all* the convened expert psychologists opposed the use of these risk assessments in the parole consideration process, it does not change the fact that the Board lied to the public and to the state's regulatory agency when it claimed that these experts *reached a consensus* that the tools were appropriate.  *Id.* ("This is a misrepresentation of the meeting that I attended; the panel reached no such consensus, and I continue to disagree with the administration of these risk assessment tools to term-to-life prisoners.").  Third, while state law might permit the Board to consider a lack of insight or remorse in assessing suitability for parole, the Board itself expressly admitted that the FAD clinicians are distinctly incapable of assessing such matters and that it is inappropriate to ask them to.  Doc. 18, at 8.  Furthermore, state law must yield to the federal court in deciding matters of federal Constitutional law.  Fourth, the less than 1% grant rate at prisoners' initial parole hearings is indicative of bias subject to federal review, as such a significantly low number of parole grants cannot be reconciled with the mandate that parole "normally" be granted.  Cal. Pen. Code, § 3041.  Finally, Defendants cannot challenge Plaintiff Johnson's claims for failure to allege specific details of other prisoners' experiences with the alleged systemic bias, as this very complaint is the only

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

avenue available for him to obtain concrete evidence of bias in his and in other inmates' parole denials.  However, even without such discovery, the Board's aforementioned illegal conduct in developing its current FAD protocol, as well as its impermissibly low parole grant rate, affect all life prisoners and certainly indicate systemic bias against granting them parole.  Doc. 18, at 15.

Because Plaintiff's complaint far exceeds the federal pleading standards for this early stage of the proceedings, the Court should permit all of the causes of action in the complaint to proceed.

## II.

## ALL DEFENDANTS AND THEIR SUCCESSORS IN OFFICE REMAIN IN THE CASE IN THEIR OFFICIAL CAPACITY.

In their motion for judgment on the pleadings, Defendants do not allege that the named defendants are immune from suit.  Doc. No. 55, at 22.[5]  Defendants claim, however, that some named defendants should be dismissed because they are "unable to provide any relief."  *Id.*  Defendants concede that Governor Brown and Executive Officer Shaffer have the authority to appropriately respond to an injunctive order.  However, according to the Defendants, "The remaining named Defendants… do not have the ability to carry out or enforce a Court ordered injunction against the Board."  *Id.* at 22.  While this may be true for any identified defendant who is no longer holding office, the fact that all Defendants are sued in their official capacity also means that their successors in office will either be continuing to implement the FAD protocol or be prohibited from doing so, dependent on the judgment of the Court.  There certainly can be no question that Defendants Brown, Shaffer, Kusaj and Hayward remain actively involved in implementing and enforcing the FAD protocol and should not be dismissed.  Each of these defendants have the ability to protect prisoners from

---

[5] This court has rejected Defendants' allegations that the named Defendants enjoy judicial immunity from suit.  (Doc. No. 17, at 6.)

16

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

1  flawed psychological evaluations and to provide the relief outlined in the First Amended

2  Complaint.

3                                   **CONCLUSION**

4          Defendants are engaging in an unlawful practice that utilizes invalid risk assessment

5  tools that unreasonably elevate predictions of risk, and they have established a virtually

6  unassailable process that insulates the FAD protocol from any outside scrutiny.  Defendants'

7  biased protocol thus significantly tips the scale *against* parole in deprivation of prisoners'

8  constitutionally-protected liberty interest.  Defendants' systemic bias must be enjoined.

9     Dated:  October 24, 2014

10                                       Respectfully Submitted,

11                                       UNCOMMON LAW

12                                        /s/  *Keith Wattley*
                                         KEITH WATTLEY
13

14                                       Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         17

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM

**CERTIFICATE OF SERVICE**

Case Name:   **Sam Johnson v. Jennifer Shaffer, et al.**

Case No:      **2:12-cv-1059 KJM**

I hereby certify that on October 24, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/DOC. system:

- **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that all participants in the case are registered CM/DOC. users and that service will be accomplished by the CM/DOC. system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 24, 2014, at Oakland, California.

/s/ Ritika Aggarwal

_____

RITIKA AGGARWAL

18

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings
*Johnson v. Shaffer, et al., No.* 2:12-cv-1059 KJM