UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAM JOHNSON,

Plaintiff,

v.

JENNIFER SHAFFER, et al.,

Defendants.

No.  2:12-cv-1059 KJM AC P

FINDINGS AND RECOMMENDATIONS

On November 12, 2014, the court held a hearing on defendants' motion for judgment on the pleadings.  Keith Wattley appeared for the plaintiff class and Heather Heckler appeared for defendants.  On review of the motion, the documents filed in support and opposition, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

## I.  PROCEDURAL HISTORY

Plaintiff Sam Johnson is a California inmate serving an indeterminate life sentence, who seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.  Defendants are the Governor of California, the Executive Officer of the Board of Parole Hearings ("BPH"), and other officials of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff challenges the constitutionality of the protocol adopted by the Board of Parole Hearings' Forensic Assessment Division ("the FAD protocol") for the preparation of psychological

1

1     evaluations to be considered in determining prisoners' suitability for parole.

2          Plaintiff's First Amended Complaint ("Complaint") was filed November 15, 2012 (ECF

3     No. 18). The Complaint asserts (a) twelve claims for violations of plaintiff's due process rights

4     under the Fourteenth Amendment to the U.S. Constitution, (b) one claim for a violation of

5     plaintiff's equal protection rights under the Fourteenth Amendment, and (c) four claims under

6     California law. The gravamen of the complaint is that "the FAD protocols were adopted (and

7     operate) to create an evidentiary basis for the denial of parole by generating unreliable future

8     dangerousness findings, rendering the suitability evaluation process biased and inherently

9     unreliable." ECF No. 40 at 12.

10          On August 21, 2013, defendant moved for summary judgment. ECF No. 30.[1] Defendants

11     argued that pursuant to Swarthout v. Cooke, 131 S. Ct. 859 (2011) (per curiam), a habeas corpus

12     case, plaintiff's due process rights are limited to an opportunity to be heard at his parole hearing,

13     and a statement of reasons for the parole decision.[2] Id., at 16. Defendants acknowledged that the

14     parole hearing must also be conducted by an unbiased tribunal in order to satisfy due process. Id.,

15     at 16; see In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic

16     requirement of due process"); O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990) (plaintiff

17     "is correct in his contention that" under the Due Process Clause, "he was entitled to have his

18     release date considered by a parole board that was free from bias or prejudice"), cert. denied, 498

19     U.S. 1096 (1991).

20          Defendants made three arguments for dismissing all of plaintiff's Section 1983 due

21     process claims. First, they argued that all the claims were subject to summary dismissal under

22     Swarthout, because plaintiff had "withdrawn" his allegation that "the FAD procedures were

23     intentionally contrived to create a false evidentiary basis for the Board to deny parole." ECF No.

24     30-1 at 16. Second, defendants argued that plaintiffs failed to overcome the presumption that the

25

26

27

28

---

[1] On the same date, plaintiff moved for class certification (ECF No. 29). The undersigned recommended that the motion be granted (ECF No. 40), and the district judge adopted that recommendation (ECF No. 44).

[2] It was undisputed that plaintiff received a hearing and a statement of reasons for the parole decision.

parole board acted with fairness and integrity in developing the FAD process.  Third, defendants

argued that plaintiff received all the process he was due under Swarthout and Greenholtz v.

Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 16 (1979) (establishing minimum due

process requirements for conduct of individual parole hearings).

On November 1, 2013, the undersigned issued a recommendation, subsequently adopted

by the district judge, that defendant's motion for summary judgment be denied as to the due

process claims.[3]  ECF No. 40.  The court determined that it was not necessary for the board to

have "set out to contrive a deficient protocol."  ECF No. 40 at 12.  The claim "was equally

supported by plaintiff's allegations that defendant adopted the protocol with knowledge of its

biases and unreliability."  Id.  The court further rejected defendants' "blanket reliance on

Swarthout and Greenholtz."  Id.  The court denied summary judgment on the due process claims

"without prejudice to future consideration of Greenholz as it may apply to plaintiff's individual

causes of action."  Id.

Plaintiff's motion for class certification, ECF No. 29, was heard together with defendants'

motion for summary judgment.  The district judge adopted the recommendation of the

undersigned that class certification be granted.  ECF Nos. 40, 44.  Accordingly, the due process

claims – the only surviving claims in the case – proceed on behalf of all California prisoners who

are serving life sentences and are eligible for parole consideration after having served their

minimum terms.  ECF No. 40 at 14.

Defendants have now filed this motion for judgment on the pleadings.

## II.  BACKGROUND

The allegations of the complaint are set out at length in the November 1, 2013 Findings &

Recommendations.  See ECF No. 40 at 1-6.[4]  The complaint alleges that defendants, California

officials including the heads of the Department of Corrections and Rehabilitation ("CDCR"),

---

[3]  The undersigned also recommended that the equal protection claim and state law claims be
dismissed.  The district judge adopted that recommendation.

[4]  Johnson v.  Shaffer, 2013 WL 5934156, at *1-3 (E.D.  Cal. 2013) (Claire, M.J.), adopted in full,
2014 WL 1309289 (E.D.  Cal.  2014) (Mueller, J.).

Board of Parole Hearings ("BPH"), and BPH Forensic Assessment Division ("FAD"), all of whom are sued in their official capacities only, deliberately adopted a protocol requiring inter alia the use of three risk assessment tools that they knew to be unreliable. According to plaintiff, "The primary purpose of establishing the FAD and implementing the new protocol was to prejudice lifers appearing before the Board by making it harder for them to obtain a favorable psychological evaluation, harder to obtain a favorable parole determination and harder to establish a favorable administrative record for challenging parole decisions in court." ECF No. 18 ¶ 29.

A. General Allegations

The BPH has long considered psychological evaluations when evaluating prisoners' suitability for parole, but prior to 2007 those evaluations were routinely conducted by mental health professionals on staff at the various institutions. In the spring of 2007, BPH issued a memo forbidding prison-based staff psychologists from conducting lifer evaluations and requiring a newly constituted FAD team to handle all of them. BPH hired its own FAD psychologists to prepare evaluations because evaluations prepared by prison-based clinicians were too often favorable to prisoners and too frequently supported judicial rejections of BPH decisions denying parole.

The FAD protocol requires the use of three specific risk assessment tools to predict future violence: the Psychopathy Checklist–Revised ("PCL–R"); the 20–item Historical, Clinical, Risk Management tool ("HCR–20"); and the Level of Service/Case Management Inventory ("LS/CMI"). In August 2006, BPH convened a panel of forensic psychologists and other experts to assess the validity of these tools for use in California's parole consideration process. The invited experts advised against use of these tools, on grounds they are scientifically unreliable and have not been validated for predicting violence among long-term prisoners like California lifers. BPH mandated the use of these tools despite this expert advice, knowing and intending that the tools would result in unreliable findings of dangerousness and thus provide a basis for denial of parole. BPH officials lied to the public and to the state's regulatory agency about the advice they had received from their expert consultants.

In late 2005 and early 2006, prior to the imposition of centralized FAD evaluations, the BPH had sought to limit the focus of prison-based psychological reports to the presence or absence of mental illness.  The Board discouraged assessment of "remorse" and "insight" into the commitment offenses, on grounds these were matters for the commissioners to assess rather than proper subjects of psychological reports.  However, Board findings regarding lack of insight were frequently criticized in judicial opinions, particularly where they were at odds with the reports of psychologists working in the institutions.  The FAD protocol places renewed emphasis on the "clinical" evaluation of remorse and insight, despite BPH knowledge that these factors do not statistically correlate with risk in the lifer population and that clinicians are incapable of assessing such matters.  The emphasis on remorse and insight in the FAD evaluations is intended to support parole denials and insulate them from judicial review.

Plaintiffs also allege that BPH established the FAD before attempting to promulgate regulations to authorize it.  When BPH did attempt to promulgate such regulations, it lied about the opinions of its expert consultants to the state agency responsible for certifying compliance with the applicable rule-making procedures.  BPH has continued to shield the FAD's systematic deficiencies and biases from public scrutiny.  In July 2010, California's Office of the Inspector General ("OIG") issued a Special Report on BPH's Psychological Evaluations.  The OIG determined that BPH has no system for tracking or otherwise monitoring the number of errors in psychological evaluations, no system for determining whether FAD psychologists are assessing higher levels of risk than were found in previous evaluations of the same prisoners, an inadequate oversight system for senior FAD psychologists to review the reports of FAD staff psychologists, and inadequate training of its psychologists.  In essence, senior psychologists routinely rubberstamp staff psychologists' reports without verifying the validity of anything written.  Due to these deficiencies, the OIG was unable to conduct the kind of review requested by the California Legislature, which provides oversight for BPH appointments and operations.

B.  Specific Allegations

The named plaintiff, Sam Johnson, sets forth the facts of his own case to illustrate the impact of the FAD protocol on California parole-eligible life prisoners.  Johnson is an inmate at

1   San Quentin State Prison, serving a sentence of life with the possibility of parole.  Prior to his

2   commitment offense plaintiff had no history of violence and no juvenile record; all three of his

3   prior convictions were misdemeanors.  Both prior to and throughout 19 years of incarceration, he

4   has maintained steady employment.  He is currently in his third term as chair of the prison's

5   Men's Advisory Council, a leadership position that involves regular interaction with prison

6   officials and with inmates of all races.  His only disciplinary infraction in 19 years was a Division

7   "F" offense six years prior to his 2010 parole hearing.  He has no history of mental illness or

8   substance abuse.  Plaintiff's risk assessment evaluation was performed by FAD psychologist

9   Richard Hayward, Ph.D. in 2009.  Dr. Hayward administered the three risk assessment tools used

10  by the FAD to project future dangerousness.  Dr. Hayward's resulting report to the BPH

11  concluded that plaintiff lacked insight and posed a high risk of recidivism.  These conclusions are

12  incorrect, and resulted from the use of unreliable tools and a biased evaluation process.  Plaintiff

13  identifies numerous specific errors and misstatements in Dr. Hayward's report that demonstrate

14  its unreliability.  The BPH relied on the report to deny plaintiff parole.

15      Plaintiff Johnson alleges that his situation is typical of that faced by parole-eligible lifers

16  throughout California's prisons.  Plaintiff's counsel has been contacted by lifers at 27 of the 32

17  California prisons that house lifers, including all eight of the prisons with the highest

18  concentrations of parole-eligible lifers, all of whom have similar complaints.  Because BPH

19  requires the FAD to conduct a psychological evaluation prior to every single parole consideration

20  hearing, all of the roughly 10,000 life prisoners who have served their minimum terms and are

21  therefore eligible for parole consideration are directly impacted by the protocol.

22      C.  The Claims

23      The First Amended Complaint contains twelve surviving claims, all asserted under the

24  Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  Since defendants

25  now attack each claim separately, they are set out briefly below.  Many of the claims are pled

26  specifically as to named plaintiff Johnson, with the further allegation that Johnson's experience is

27  representative of the parole hearing process as it incorporates the FAD protocol and is applied to

28  parole-eligible prisoners generally.  Because the class has been certified, the undersigned

construes those claims as being alleged by the class.

Claim 1.  Plaintiffs allege that they have a liberty interest in being released on parole, and a Due Process right to a fair parole hearing.  In violation of this right, the FAD protocol is designed to be, and is, biased against finding parole suitability.  It was adopted to deny plaintiffs a fair parole hearing by fabricating evidence that will support denial of parole and protect BPH from judicial review.  This protocol was used in plaintiff Johnson's parole hearing, and has been used in most parole hearings since 2006 and almost all parole hearings since January 2009.

Claim 2.  Plaintiffs allege that their Due Process rights have been violated because the defendants lied about the protocols used in parole hearings, and rely upon "invalid instruments" in determining parole outcomes even thought they know of their invalidity.

Claim 3.  Plaintiffs allege that their Due Process rights have been violated because the FAD protocol provides no mechanism for error correction, and parole panels rely upon error-plagued reports to deny parole, even when they know the reports are riddled with errors.  For example, Dr. Hayward's FAD report regarding named plaintiff Johnson was riddled with errors, yet the panel simply overlooked the errors, and used the report to deny plaintiff parole.

Claim 4.  Plaintiffs allege that their Due Process rights have been violated by the denial of "notice of the evidence being used to consider their suitability for parole."  They allege this right is violated by defendants' refusal to provide the data underlying the FAD reports, which in turn has been used to deny plaintiffs parole.  For example, defendants refused to provide named plaintiff Johnson with the raw data underlying Dr. Hayward's report.

Claim 5.  Plaintiffs allege that the refusal to provide access to the data underlying the FAD reports also deprives them of their Due Process right to be heard at their parole hearings.  For example, defendants refused to provide named plaintiff Johnson with the raw data underlying Dr. Hayward's report.  The report contained a new and unsubstantiated diagnosis of Anti-Social Personality Disorder.  Without knowledge of the basis for the diagnosis, Johnson could not meaningfully contest this evidence at the parole hearing.

Claim 6.  Plaintiffs allege that their Due Process rights have been violated when the parole panels rely on "evidence lacking sufficient indicia of reliability" regarding plaintiffs' suitability

for parole.  For example, named plaintiff Johnson's meeting with Dr. Hayward was not recorded or transcribed, depriving him of any meaningful opportunity to challenge Dr. Hayward's conclusions.

Claim 7.  Plaintiffs allege that their Due Process right to a fair hearing is violated by defendants' knowing use of a standard-less, arbitrary and inconsistent scoring system to deny plaintiffs parole.

Claim 8.  Plaintiffs allege that their Due Process right to a fair hearing is violated by the parole panels' failure to consider plaintiffs' challenges to the FAD reports.  Instead, the panels rubber-stamp the FAD evaluations, knowingly overlook substantive errors in them, and use them to deny plaintiffs parole.  In the case of named plaintiff Johnson, the panel knowingly overlooked substantive errors even after acknowledging their existence.

Claim 9.  Plaintiffs allege that they have a "limited" Due Process right to "confront and cross examine [the] putative experts" whose FAD reports are used to deny plaintiffs parole.  In violation of this right, defendants deny plaintiff the opportunity to investigate, confront or cross-examine the FAD psychologists who have created the reports used to deny plaintiff parole.[5]  In plaintiff Johnson's case, defendants would not even respond to plaintiff's request to make Dr. Hayward available to testify at the hearing.

Claim 10.  Plaintiffs allege that their Due Process right to unbiased parole decision-makers is violated because defendants systematically overlook any substantial errors in FAD evaluations so long as the errors support the denial of parole.  In plaintiff Johnson's case, the panel knowingly overlooked nine substantive errors in Dr. Hayward's report, and used the report to deny him parole.

Claim 11.  Plaintiffs allege that their Due Process rights have been violated by BPH's development of the FAD protocol to fabricate a basis for continuing its impermissibly low grant rate, and to justify its bias against granting parole.

_____

[5]  Plaintiffs allege that California law requires defendants to make the FAD psychologists available to testify at parole hearings, if requested, citing Cal. Penal Code § 2081.5 and Cal. Govt. Code § 11181.

1    Claim 12.  Plaintiffs allege that they have a Due Process right to call witnesses, including

2    adverse witnesses, at their parole hearings.  In violation of this right, defendants refuse to permit

3    named plaintiff Johnson and other lifers to call FAD psychologists or other witnesses at their

4    parole hearings.

5    It is apparent from plaintiff's opposition brief, and was confirmed by plaintiff's counsel at

6    hearing on the motion, that these separately denominated "claims" do not in fact allege twelve

7    distinct causes of action or even separate due process violations.  Claims 4, 5, 9 and 12 involve

8    the procedural safeguards afforded to inmates in the context of their individual hearings.  These

9    claims are fairly construed as alleging discrete due process violations.  All of plaintiff's other due

10   process "claims," however, are best understood as components of the overarching claim that the

11   FAD protocol deprives plaintiffs of a fair and unbiased parole consideration process.  Claim 10

12   focuses on the bias of individual parole hearing panels.  Claims 1 and 11, which constitute the

13   core of plaintiff's case, focus on the systematic bias that the FAD protocol allegedly builds into

14   the parole consideration process.  Claims 2, 3, 6, 7, and 8 are here construed as alleging additional

15   facts in support of the systemic bias claim principally embodied in Claims 1 and 11.

16                                      III.  STANDARDS

17       A.  Judgment on the Pleadings

18   Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early

19   enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ.

20   P. 12(c).  In a 12(c) motion, the court "assume[s] that the facts that [plaintiff] alleges are true."

21   Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) (citing U.S. ex rel. Cafasso v. Gen.

22   Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011)).  "'Judgment on the pleadings is

23   properly granted when [, accepting all factual allegations in the complaint as true,] there is no

24   issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'"

25   Chavez v. U.S., 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting Fleming v. Pickard, 581 F.3d

26   922, 925 (9th Cir. 2009)).

27   Where, as here, the 12(c) motion is based upon defendants' assertion that the complaint

28   fails to state a claim, the court's analysis "is 'substantially identical' to analysis under

9

1   Rule 12(b)(6) because, under both rules, "a court must determine whether the facts alleged in the

2   complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez, 683 F.3d at 1108.

3   Under that standard, to survive dismissal, the complaint must contain more than a "formulaic

4   recitation of the elements of a cause of action;" it must contain factual allegations sufficient to

5   "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S.

6   544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts

7   that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright

8   & A. Miller, Federal Practice and Procedure 1216, pp. 235-236 (3d ed. 2004). "[A] complaint

9   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

10   on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

11   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

13          The court must accept as true the allegations of the complaint. Jackson, 749 F.3d at 763

14   (in a motion for judgment on the pleadings, the court must "assume that the facts that [plaintiff]

15   alleges are true"). However, the court need not accept legal conclusions "cast in the form of

16   factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert.

17   denied, 454 U.S. 1031 (1981). The court also construes the complaint in the light most favorable

18   to the plaintiff, as the party opposing the motion, and it resolves all doubts in the plaintiff's favor.

19   Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The court will "'presume that general

20   allegations embrace those specific facts that are necessary to support the claim.'" National

21   Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v.

22   Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

23          B. Due Process

24          Pursuant to the Fourteenth Amendment to the U.S. Constitution,

25                  No State shall . . . deprive any person of life, liberty, or property,
                    without due process of law.
26

27   U.S. Const. amend. XIV, § 1. "A section 1983 claim based upon procedural due process thus has

28   three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of

10

1  the interest by the government; (3) lack of process." <u>Portman v. County of Santa Clara</u>, 995 F.2d

2  898, 904 (9th Cir. 1993).[6]

3  IV.  <u>ANALYSIS</u>

4  A.  <u>The Liberty Interest At Stake</u>

5  Plaintiffs allege that California's parole scheme creates in them a constitutionally

6  protected liberty interest in being released on parole.  <u>See</u> Complaint ¶¶ 51 (First Claim, alleging

7  that "California's parole scheme creates a constitutionally protected liberty interest in . . . being

8  released on parole") & 85 (Twelfth Claim, alleging that "California law creates a constitutionally

9  protected liberty interest in parole").  Defendants do not contest the assertion that plaintiffs have a

10  protected liberty interest in being released on parole.

11  In any event, the assertion is well supported by the statutes governing parole in California,

12  and by Supreme Court and Ninth Circuit authority.  <u>See</u> Cal. Penal Code § 3041(b) (the parole

13  board "<u>shall</u> set a release date unless it determines that . . . consideration of the public safety

14  requires a more lengthy period of incarceration") (emphasis added); <u>Bd. of Pardons v. Allen</u>, 482

15  U.S. 369, 370-71 (1987) (Montana parole scheme created a federally protected liberty interest in

16  parole where the statute mandates that "the Board <u>shall</u> release the inmate when the findings

17  prerequisite to release are made") (emphasis added); <u>Miller v. Oregon Bd. of Parole and Post</u>

18  <u>Prison Supervision</u>, 642 F.3d 711, 714 (9th Cir. 2011) ("A state parole statute establishes a

19  protected liberty interest in parole when it uses language that creates a presumption that the

20  prisoner will be paroled if certain conditions are satisfied").  <u>See also</u>, <u>Greenholtz</u>, 442 U.S. at 12

21  (Due Process Clause applies to discretionary parole-release determinations made by the Nebraska

22  Board of Parole); <u>Swarthout</u>, 131 S. Ct. at 862 (noting that "[t]he liberty interest at issue here is

23  the interest in receiving parole when the California standards for parole have been met").

24  Plaintiff has sufficiently alleged the first element of a Due Process violation.

25  [6]  The Ninth Circuit cases more typically refer to a "two step" analysis, in which the first two

26  steps are combined.  <u>See, e.g.</u>, <u>Vasquez v. Rackauckas</u>, 734 F.3d 1025, 1042 (9th Cir. 2013)
    ("The first asks whether there exists a liberty or property interest which has been interfered with

27  by the State; the second examines whether the procedures attendant upon that deprivation were
    constitutionally sufficient") (internal quotation marks omitted).

28

11

B. Deprivation of the Liberty Interest

Plaintiffs sufficiently allege that they were deprived of their liberty interest in parole, and this is not contested by defendants.

C. The Process That Is Due

To satisfy the final element of a Due Process violation, plaintiffs must sufficiently allege that the procedures used to deprive them of parole are deficient under the Due Process Clause. As noted above, plaintiffs' claims may be grouped into two categories.

The first group – Claims 1, 2, 3, 6, 7, 8, 10 and 11 – targets bias in the parole decision-making process, both systemically and at the level of individual decision-makers (i.e., parole panels). The "parole decision-making process" challenged by the systemic bias allegations is not limited to the parole hearings themselves, but focuses on the overall process of assessing suitability. Plaintiffs contend that this process is rigged by use of the FAD protocol to result in denial of parole even when an inmate is entitled to it. In these claims, plaintiffs allege that defendants deliberately and knowingly use unreliable, biased evidence, including FAD reports riddled with substantial errors, in order to ensure that parole is denied in nearly every case. Below, the court separately addresses the related but conceptually distinct issues of systemic bias (the right to a fair and unbiased parole *process*[7]) and tribunal bias (the right to a fair and unbiased parole *panel*[8]) that are encompassed within this group of bias-related claims.

The second group – Claims 4, 5, 9 and 12 – alleges that defendants unfairly deny inmates evidence and procedures that they need to challenge the biased FAD inputs at individual hearings. These claims focus on how individual parole hearings are conducted, and challenge the process provided during and in relation to those hearings. Plaintiffs allege that they are entitled to, but denied, the raw data underlying the FAD reports, and that they are denied the right to call

---

[7] This ground for relief is principally embodied in Claims 1 and 11, and supported by the allegations of Claims 2, 3, 6, 7, and 8. Although set forth in the Complaint as distinct claims, the court construes these allegations as comprising a single claim of systemic bias. At hearing on the motion, plaintiff's counsel indicated general agreement with this construction.

[8] This ground for relief is principally embodied in Claim 10. The allegations of Claim 10 are also incorporated by reference into the systematic bias claim.

12

1    witnesses and to confront and cross-examine the experts who produce the FAD reports.

2    Following discussion of plaintiff's bias theories, the court considers the claims that due process

3    requires these specific procedures.

4                        1.      The right to a fair and unbiased parole process

5            The core requirement of due process is a fair and unbiased decision-making process.  In re

6    Murchison, 349 U.S. 133, 136 (1955) ("A fair [proceeding] in a fair tribunal is a basic

7    requirement of due process"); see also Swarthout, 131 S. Ct. at 862 ("When, however, a State

8    creates a liberty interest, the Due Process Clause requires *fair procedures* for its vindication")

9    (emphasis added).

10           Plaintiffs allege that they are denied parole in an unfair, systemically biased parole

11   determination process.  Specifically, plaintiffs allege that the parole authorities use risk

12   assessment tools which defendants know are invalid, and which are biased against parole by

13   producing "impermissibly elevated" risk assessments.  In addition, the FAD reports, upon which

14   individual hearing panels rely in determining parole suitability, contain risk assessments which

15   defendants know were made by people incapable of making such assessments.  Moreover,

16   defendants have structured the process to ensure that the invalidity of the risk assessment tools

17   will never be discovered, and that errors in FAD reports over-predicting risk will not be

18   discovered and otherwise will be ignored.

19           Plaintiffs are not simply alleging that there are errors in the way that individual parole

20   hearings are conducted.  Rather, they are alleging that defendants are knowingly producing

21   erroneous determinations by systematically requiring the panels to rely on reports and evidence

22   known by defendants to be unreliable.  Moreover, plaintiffs are not alleging random errors.

23   Rather, they allege that these forced, known errors create a process that is biased against parole

24   by producing invalid, and impermissibly elevated, risk assessments.  Like customers in a deli

25   whose scale reads "two pounds" before anything is placed on it, plaintiffs allege that they are the

26   victims of a rigged process that can err in only one direction – always against them.

27                        a.      Legal basis of bias claim

28           Defendants argue that the only type of "bias" cognizable in a Due Process claim is bias on

1  the part of individual parole hearing panels or their members against individual inmates.

2  Defendants seek judgment on the pleadings on grounds that the named plaintiff "makes no

3  allegation that individual parole board members were biased against him specifically," and that

4  his allegation of systemic bias "is insufficient to state a bias claim because Johnson does not

5  allege bias by a specific decision-maker."  Opposition at 18-19.  According to defendants,

6  systemic bias is "novel as a due process claim."  ECF No. 55 at 19.  The only due process claim

7  that lies on grounds of "bias," they argue, is one in which plaintiff alleges "that the individual or

8  individuals rendering the decision were *themselves* biased in some manner," and moreover, "that

9  individual board members were biased *against him specifically*."  ECF No. 55 at 18 (emphasis

10  added).

11          Defendants cite no authority that precludes systemic bias as the basis for a Due Process

12  claim, and the court is unable to find any.  Rather, defendants argue that no binding authority

13  explicitly recognizes systemic bias as the basis of a Due Process violation.  In the context of a §

14  1983 action, however, relief is not rendered unavailable where a claim presents an issue of first

15  impression or one which requires application of general principles to a new set of facts.[9]

16          Of course it is true that the parole decision must be made by panel members who are not

17  personally biased against a specific inmate.  See O'Bremski, 915 F.2d at 422 (plaintiff is correct

18  that under the Due Process Clause, "he was entitled to have his release date considered by a

19  parole board that was free from bias or prejudice").  Plaintiffs' allegations regarding biased

20  decision-makers are discussed separately, below.  But a biased individual decision-maker is not

21  the only way a hearing can be unfair under the Due Process Clause.  Plaintiff's allegations of

22  systemic bias are best understood as a challenge to the fundamental fairness of the parole process

23  as it incorporates the FAD protocol.  There is ample precedent for application of the fundamental

24  fairness principle enshrined in the Due Process Clause to state rules and processes that rig

_____

25  [9]  Various claims of systemic bias in California's parole process have been raised in vain in the
    habeas corpus context over the years.  Even before Swarthout categorically foreclosed habeas
26  challenges to individual parole denials, the AEDPA's limits on relief and the anti-retroactivity
    rule of Teague v. Lane, 489 U.S. 288 (1989), prevented relief on any constitutional theory not
27  already established by precedent.  No such limitations affect the court's analysis here.

28

1    proceedings implicating liberty against one side.  See Chambers v. Mississippi, 410 U.S. 284, 303

2    (1973) (criminal trial procedures "denied [defendant] a trial in accord with traditional and

3    fundamental standards of due process").

4         We deal here, of course, with a parole hearing and not a criminal trial; accordingly the

5    quantum of Due Process protections afforded plaintiffs in this case differs from than in Chambers.

6    But the requirement of fair procedures transcends the specific type of adjudicatory proceeding

7    involved.  That is because "[a] fair trial in a fair tribunal is a *basic requirement* of due process."

8    In re Murchison, 349 U.S. at 136 (emphasis added).  "This applies to administrative agencies

9    which adjudicate as well as to courts."  Withrow v. Larkin, 421 U.S. 35, 47 (1975) (citing Gibson

10   v. Berryhill, 411 U.S. 564, 579 (1973)); Stivers, 71 F.3d at 741 (same).  Moreover, the fairness

11   requirement specifically applies to prison authorities adjudicating an inmate's suitability for

12   parole.  Swarthout itself, the case most heavily relied upon by defendants here, states

13   unequivocally that where, as here, the state has created a protected liberty interest in parole, "the

14   Due Process Clause requires *fair procedures* for its vindication."  131 S. Ct. at 862 (emphasis

15   added).

16        Due process requires fair-minded people on the hearing panel, and it requires that the

17   procedures that govern (and, as alleged here, largely determine) their decision-making must also

18   be fair.  See Murchison, 349 U.S. at 136 (requiring both a fair tribunal and a fair proceeding).

19   Both are necessary for the decision itself to be impartially rendered, as due process requires.  See

20   Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir.), cert. denied, 454 U.S. 1102 (1982) (noting

21   duty of parole board members to "render impartial decisions").[10]  If a protocol is designed to

22   systematically produce unreliable evidence of parole unsuitability and thus result in denials of

23   parole, that process is fundamentally unfair.  Such a process is also biased, by definition, in that it

24

---

25   [10]  See also Sunshine Mining Co. v. United Steelworkers of America, 823 F.2d 1289, 1295 (9th
     Cir. 1987) (a proceeding is fundamentally fair if it provides adequate notice, a hearing on the
26   evidence, and "an impartial decision" by the decision-maker) (citing Ficek . Southern Pacific Co.,
     338 F.2d 655, 657 (9th Cir. 1964), cert. denied, 380 U.S. 988 (1965)); Doe v. Gallinot, 657 F.2d
27   1017, 1025 (recognizing due process requirement that decision-makers must be "capable of
     rendering an impartial decision").

28

1   is skewed toward particular results.  Because Due Process guarantees "impartial decisions," id.,

2   the duty of impartiality cannot be limited to that part of the decision-making process that takes

3   place within the minds of the hearing officers in relation to a specifically-targeted inmate.

4            In response to a question at oral argument, defendants asserted that Due Process would not

5   be offended by a parole system that is designed to produce a specific outcome, as long as the

6   particular parole panel in any given case retains the discretion to reach a different outcome.

7   According to defendants, the only way a rigged hearing process could violate Due Process is if a

8   particular panel (or panel member) pre-judged the outcome of an individual case.  Defendants cite

9   Stivers v. Pierce, 71 F.3d 732 (9th Cir. 1995) and Caperton v. A.T. Massey Coal Co., 556 U.S.

10  868, 877 (2009), for the proposition that the only "bias" cognizable in the Due Process context is

11  the bias of individual parole panel members against a specific party.  Defendants misread these

12  cases, neither of which considered the question of systemic bias.

13           In Stivers, plaintiffs alleged that a licensing board member had a pecuniary interest in the

14  outcome of the licensing proceeding at issue, and was therefore personally biased against them.

15  Stivers, 71 F.3d at 736.  The plaintiffs further alleged that, "influenced by that member's bias, the

16  other Board members and certain employees prejudged their applications."  Id.  The Ninth Circuit

17  was thus deciding a case in which individual board members were alleged to be personally biased

18  against the particular plaintiffs.  In that context, the Ninth Circuit wrote:

19                    There are two ways in which a plaintiff may establish that he has
                      been denied his constitutional right to a fair hearing before an
20                    impartial tribunal.  In some cases, the proceedings and surrounding
                      circumstances may demonstrate actual bias on the part of the
21                    adjudicator.  In other cases, the adjudicator's pecuniary or personal
                      interest in the outcome of the proceedings may create an
22                    appearance of partiality that violates due process, even without any
                      showing of actual bias.
23

24  Stivers, F.3d at 741 (citations omitted).  In other words, the court was outlining ways that bias by

25  the individual decision-maker could be alleged or shown – the issue that was presented on the

26  facts of the case.  The opinion does not reach beyond the facts of the case to hold that *only*

27  individual bias can deprive a plaintiff of a fair hearing.  The case simply does not address any

28  ////

1   other way a hearing can be unfair or biased.[11]

2          There is another reason why a systemic bias that essentially forces the outcome of parole

3   hearings against parole could be a Due Process violation.  The California statute that creates the

4   protected liberty interest in parole states that it is the *parole panel* that decides whether or not to

5   grant parole:

6               The panel or the board, sitting en banc, shall set a release date
                unless *it* determines that the gravity of the current convicted offense
7               or offenses, or the timing and gravity of current or past convicted
                offense or offenses, is such that consideration of the public safety
8               requires a more lengthy period of incarceration for this individual,
                and that a parole date, therefore, cannot be fixed at this meeting.
9

10  Cal. Penal Code § 3041(b) (emphasis added).  Plaintiffs' allegation of systemic bias against

11  parole means that, in violation of this statute, the parole panel is only the nominal decision-maker,

12  and that defendants are actually determining outcomes by their creation and adoption of the FAD

13  protocol.

14         Defendants argue elsewhere that such a theory is precluded because the Due Process

15  Clause is not implicated by State violation of state law.  In support of that argument, defendants

16  cite cases holding that violations of state law or local laws do not generally amount to violations

17  of the Due Process clause.  See Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982) ("We have long

18  recognized that a "mere error of state law" is not a denial of due process"); Jacobs v. Clark

19  County School Dist., 526 F.3d 419, 441 (9th Cir.  2008) (finding no Due Process violation where

20  "a *local* entity deviates from its *own* procedures in enacting a *local* regulation") (italics in

21  original); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("alleged errors in the

22  application of state law are not cognizable in federal habeas corpus").

23         The cited cases however, address the violation of state laws that, as far as the court can

24  tell, do not *create* the liberty interest being litigated.  Here, plaintiffs allege that defendants are in

25  _____

26  [11]  Defendants' citation of Caperton does not advance its case, either.  The Supreme Court there
    found that recusal was required by a state court justice who had received extraordinary campaign
27  donations from the principal of a party in a case before the justice.  Systemic bias was not at
    issue.

28

1   violation of the very state statute that creates their liberty interest in parole.  The rule in such a

2   case is quite different, because "[o]nce a state creates a liberty interest, it can't take it away

3   without due process."  <u>Marsh v. County of San Diego</u>, 680 F.3d 1148, 1155-56 (9th Cir. 2012)

4   (citing <u>Swarthout</u>, 131 S. Ct. at 862).  Indeed,

5   
6   > [a] state official's failure to comply with state law that gives rise to
    > a liberty or property interest may amount to a procedural (rather
    > than substantive) due process violation, which can be vindicated
7   > under 42 U.S.C. § 1983.

8   <u>Marsh</u>, 680 F.3d at 1155-56.

9         It is worth noting at this point the obstacle to plaintiffs' case that defendants believe is

10  posed by <u>Swarthout</u>.  The habeas petitioner in that case challenged the denial of parole on

11  grounds that no evidence supported the denial, while California law affirmatively required "some

12  evidence."  The Ninth Circuit granted relief, and the Supreme Court reversed.  The Supreme

13  Court rejected the claim that the inmate's federal Due Process rights were violated.  The Court

14  stated, "[t]he Ninth Circuit's questionable finding that there was *no* evidence in the record

15  supporting the parole denials is irrelevant unless there is a federal right at stake, as § 2254(a)

16  requires."  <u>Swarthout</u>, 131 S. Ct. at 863 (italics in text).  Since the right at issue in that case was

17  the state-created procedural right to the benefit of California's "some evidence" requirement, the

18  Court stated that "the responsibility for assuring that the constitutionally adequate procedures

19  governing California's parole system are properly applied rests with California courts, and is no

20  part of the Ninth Circuit's business."  <u>Id.</u> at 863.  In the case at bar, in contrast, there is a

21  federally-protected right at stake for the reasons previously explained.  And since <u>Swarthout</u> did

22  not involve allegations of bias, either systemic or individual, it has no bearing on the analysis

23  before this court.

24        Neither <u>Swarthout</u> nor <u>Greenholtz</u>, <u>supra</u>, on which defendants also rely, precludes

25  plaintiff's systemic bias claim.  Both opinions addressed situations in which the Due Process

26  requirements applicable to the conduct of the parole hearing itself – an opportunity to be heard, a

27  written explanation for the decision, and, in <u>Swarthout</u>, the opportunity for the prisoner to

28  confront the evidence against him – had been satisfied.  Neither case mentioned the independent

1   requirement of an unbiased decision-maker, and neither considered events outside the hearing

2   room that had impermissibly influenced the decision-makers and the outcome.  This court is not

3   aware of any Supreme Court or Ninth Circuit authority holding that Due Process is satisfied by

4   notice and an opportunity to be heard before a tribunal whose decisions are substantially

5   determined by a biased process, nor have defendants cited any such cases to the court.

6   Accordingly, this court does not conclude that Swarthout or Greenholtz overruled, sub rosa, well-

7   settled authority requiring that in *any* hearing required by the Due Process clause, the opportunity

8   to be heard must afforded before an unbiased adjudicator in an unbiased process.  See, e.g.,

9   Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (if parole revocation procedure includes a

10  hearing, Due Process requires it occur before "a 'neutral and detached' hearing body"); In re

11  Murchison, 349 U.S. at 136 (criminal contempt trial requires a judge who is not biased, and is

12  free from the appearance of bias); O'Bremski, 915 F.2d at 422 (plaintiff "is correct in his

13  contention that" under the Due Process Clause, "he was entitled to have his release date

14  considered by a parole board that was free from bias or prejudice"); Sellars, 641 F.2d at 1303

15  (task of parole board officials is to render impartial decisions).

16          Even a decision-maker who harbors no personal biases cannot be considered "free from

17  bias or prejudice," O'Bremski, 915 F.2d at 422, if her decision is pre-determined (or substantially

18  influenced) by systematically biased inputs.  What matters constitutionally is that the decisions

19  are impartially rendered.  Any source of bias that distorts the decision-making process – whether

20  that bias arises in the minds of individual decision-makers or is generated by a psychological

21  evaluation protocol skewed to support a particular outcome – is equally offensive to fundamental

22  fairness.  Parole decisions cannot reasonably be considered "impartial" if they are products of a

23  biased protocol that favors a particular outcome.  For these reasons, the undersigned concludes

24  that plaintiffs state a Due Process claim by alleging that they were deprived of their liberty

25  interest in parole by the state's use of an unfair and systemically biased parole determination

26  process.

27                    b.      Sufficiency of the allegations

28          Defendants argue that even if a systemic bias claim were legally viable, the complaint

19

1    here does not sufficiently allege facts that would support it.  The court concludes to the contrary

2    that plaintiffs have sufficiently alleged the existence and knowing use by defendants of unreliable

3    evidence, designed to implement their bias against parole.

4          Plaintiffs allege that the board itself "convened a panel of forensic psychologists and other

5    experts to assess the validity of three risk assessment tools for use in California's parole

6    consideration process."  Complaint ¶ 25.  That panel "argued *against* the BPH's use of" the

7    protocol.  Complaint ¶ 25 (emphasis added).  The panel criticized the protocol because it "had

8    never been validated for predicting violence among long-term prisoners like California's lifers."

9    Complaint ¶ 25.  Notwithstanding the panning the protocol received from the board's own

10   experts, the board adopted the protocol.  Complaint ¶ 32.

11         Plaintiffs further have alleged several ways in which the risk assessment tools are invalid.

12   Among them, plaintiffs allege that the "PCL-R" is used recklessly "by inadequately-trained and

13   inexperienced psychologists to predict violence."  Complaint ¶ 22.  They allege that "HCR-20" is

14   "not a formal measurement instrument," even though defendants, knowing of this limitation, use

15   it as a measurement instrument, and in any event, its use is not governed by any scientific

16   standards or norms.  Complaint ¶ 23.  They allege that the "LS/CMI" is not a valid predictor of

17   violence, yet that is what defendants use it for, knowing of its invalidity.  Complaint ¶ 24.  This

18   sufficiently alleges a failure of due process, inasmuch as plaintiffs allege that this "knowing"

19   reliance on invalid instruments that overstate inmates' risks of future violence, deprives them of a

20   fair and unbiased hearing.

21         Defendants argue that plaintiffs "admit" that the PCL-R tool is "'only moderately

22   predictive of future violence,'" and therefore that plaintiffs are conceding that the tool is valid

23   because it provides "some measure of predicting an inmate's future violence."  Motion at 19.

24   Defendants' argument does not undermine plaintiffs' allegation that the tool is invalid.  A tool

25   that wildly overstates a risk of future violence for a hypothetical inmate with a miniscule, or

26   statistically zero chance of future violence, provides "some" measure of prediction, but it is an

27   *invalid* measure.

28         Defendants argue that plaintiffs concede that the HCR-20 tool is left to the psychologists'

1   "clinical judgment," and therefore fail to allege that its use is invalid.  However, plaintiff alleges

2   that these psychologists are "relatively inexperienced," and "untrained," such that their "clinical

3   judgment" is no more accurate "than flipping a coin."

4           Defendants argue that plaintiffs concede that the LS/CMI tool "only moderately predicts

5   general recidivism," even though it "has not been established to predict violence."  They argue

6   that plaintiffs are therefore conceding that the tool is valid.  Plaintiffs are not conceding any such

7   thing.  Plaintiffs allege that the tool is invalid as a predictor of violence, and that it is nevertheless

8   used as a predictor of violence.

9           Plaintiff has adequately alleged that these three tools are invalid.  They further allege that

10  defendants use these tools against them, knowing that they are invalid and that because of their

11  invalidity, they over-predict risk.  This, they allege, evidences defendants' systemic bias against

12  parole.

13          Plaintiffs further allege that defendants rely on FAD reports that they know contain

14  substantial errors.  To the degree (if any) that plaintiffs claim a Due Process right to have only

15  error-free consideration of their parole hearing, the claim is precluded because "there simply is no

16  constitutional guarantee that all executive decisionmaking must comply with standards that assure

17  error-free determinations."  Greenholtz, 442 U.S. at 7.  Once again, however, plaintiffs do not

18  merely claim a right to error-free parole decisions.  Rather, they allege that defendants know of

19  the substantial errors contained in the FAD reports, but rely on them anyway in order to deny

20  parole.  This adequately alleges that defendants have a systemic bias against granting parole even

21  when the inmate is entitled to it.[12]

22          In sum, these allegations are sufficient to allege that the board knowingly infected the

23  _____

24  [12]  Defendants repeatedly misread plaintiffs' allegations.  They argue that the Complaint alleges
    that the panel of experts "did not reach *any* consensus concerning the appropriateness of the risk

25  assessment instruments."  ECF No. 55 at 20 (emphasis added).  The Complaint does not allege
    that.  It alleges, rather, that the board "lied" to the public by stating that the panel *had* reached a

26  consensus "that these tools were appropriate."  It then alleges that a member of the panel then
    stated that "the panel reached no *such* consensus."  Complaint ¶ 26 (emphasis added).  A

27  statement that no "such" consensus – of the purported suitability of the protocol – was reached, is
    quite different than an admission that the panel "did not reach *any* consensus."

28

1  parole hearing process with a protocol that would over-predict the risk of future violence, thus

2  skewing the entire process toward the denial of parole, even in cases where parole was warranted.

3          2.     The right to a fair and unbiased parole panel

4        Named plaintiff Johnson alleges that in considering his individual parole application, the

5  hearing panel relied upon a report created by Dr. Hayward.  Complaint ¶ 39.  That report

6  contained nine substantial errors, with each error tending to support a conclusion that parole

7  should be denied.  Complaint ¶ 38.  For example, the report claims that plaintiff "'had significant

8  problems with previous violence, psychopathy (sic) and Antisocial Personality Disorder' prior to

9  the commitment offense," even though none of that is true.  Complaint ¶ 38(c).

10        Plaintiff further alleges that the board withheld from the deciding parole panel his

11  correspondence pointing out the substantial errors.  Complaint ¶¶ 40 & 74.  The panel eventually

12  learned of the communication "after the hearing had already begun," when plaintiff provided it to

13  the "presiding commissioner."  Complaint ¶ 40.  Thereupon, the panel "actually agreed with

14  Plaintiff that Dr. Hayward's report contained substantial errors."  Complaint ¶¶ 39 & 74.  Neither

15  the panel nor the board itself sought a delay to consider the errors, nor required submission of a

16  new or revised report, although the FAD protocol itself required it.  Complaint ¶¶ 39, 74 & 80.

17  Instead, the panel, knowing of the FAD report's substantial, uncorrected errors – all supporting

18  the denial of parole – "simply overlooked" them, and relied on that report to deny plaintiff parole.

19  Complaint ¶¶ 39, 74 & 80.

20        These allegations raise a strong inference that the panel itself was biased toward a denial

21  of parole.  It is reasonable to conclude that a neutral panel would have insisted upon revisions or a

22  new report that was not plagued with substantial errors, all slanted toward the denial of parole.  If

23  no such report or revision was forthcoming, it is reasonable to believe that a neutral panel would

24  not have relied on the flawed report it did receive -- or at least would have noted the panelists'

25  objection, even if they felt compelled to rely on it.  Since an inference of actual bias is reasonable

26  from plaintiff's allegations, the court is obliged to draw it on this Rule 12(c) motion.

27        Defendants argue that plaintiff "does not allege that his 2009 Board panel was specifically

28  biased against him," or that they "prejudged his case."  ECF No. 55 at 17.  It is true that plaintiff

1    does not explicitly allege that the individual panel members were biased against him personally.

2    Such allegations are not necessary here since, as discussed above, plaintiff alleges facts

3    supporting the inference that the panel was biased against him.  Plaintiff's inability to read the

4    minds of the individual panel members, or to prove that they had an interest in denying him

5    parole, does not prevent him from showing that the panel's conduct betrays their bias.[13]

6            Defendants argue that plaintiff's allegations are "conclusory."  This grossly over-used

7    term is entirely inapplicable here.  As discussed above, plaintiff has set forth exactly what the

8    specific circumstances are that he relies upon in asking the court to infer bias on the part of the

9    panel.  Defendants do not even attempt to explain what is "conclusory" about plaintiff's

10   allegations.

11           Defendants next argue that the bias claim "is nothing more than an attempt to challenge

12   the sufficiency of the evidence," an attempt that is precluded by Swarthout.  That is not correct.

13   Plaintiff does indeed allege that there is insufficient evidence to support the panel's denial of his

14   parole, and it is also correct that this court does not sit in judgment of the panel's decision on the

15   merits of any individual parole denial.[14]  However, it is not true that the bias allegation is

16   "nothing more" than that.  The allegations are not simply that the board relied upon a flawed

17   report.  Rather, the allegations are that the board relied upon a biased report, knowing that it was

18   biased, and overlooking its substantial errors, all in order to deny parole.  Defendants are correct

19   that plaintiff has no Due Process right to an "error-free" parole determination.  But plaintiff does

20   not allege simple error.  He alleges actual bias that prevented the board from giving him a fair

21   hearing.

---

22   [13]   Defendants also contest the purported claim that "bias was demonstrated because [the panel]

23   relied on a psychological risk assessment that Johnson disagrees with."  ECF No. 55 at 17.  This
     formulation misrepresents the plaintiffs' allegations.  Plaintiffs do not allege that they simply

24   "disagree" with the risk assessments.  They allege that the panels rely upon these assessments

25   even though the panels *know* that they contain substantial errors, and that the panels deliberately
     overlook these errors in order to deny parole.  Whether plaintiffs can prove these allegations is

26   not for this court to decide on this motion.

27   [14]   Plaintiff does not seek to have the previous denial overturned for insufficient evidence or on
     any other grounds.  He and the other class members seek parole consideration free from the
28   biasing effects of the FAD protocol.

1    Finally, defendants misrepresent plaintiff's allegations.  According to defendants, the

2    Complaint alleges that "the panel acknowledged the existence of certain errors in the report and

3    *considered* them when reaching the decision."  ECF No. 55 at 18 (emphasis added) (citing

4    Complaint ¶ 80).  The Complaint alleges no such thing.  Both at Paragraph 80 and elsewhere, the

5    Complaint refutes the idea that the board "considered" the substantial errors in the report, and

6    alleges instead that the panel deliberately "overlooked" them.[15]  See Complaint ¶¶ 39, 80 & 81.

7    The complaint expressly alleges that the facts supporting an inference of bias in plaintiff

8    Johnson's case are "routine" examples of defendants' general "practice" that "reflect a clear bias

9    against Plaintiff [Johnson] and others like him."  Complaint ¶ 80-81; see also ¶ 74.  Accordingly,

10   the undersigned concludes that the complaint adequately states a biased tribunal claim on behalf

11   of the plaintiff class.

12                 3.       The right to specific procedures

13   The court now turns to the second group of claims, those which allege denial of specific

14   procedural protections in relation to parole hearings.  The complaint alleges that due process is

15   violated by defendants' refusal to: (1) produce the data and raw test scores underlying the FAD

16   reports (Claims 4 and 5); (2) permit inmates to confront and cross-examine the psychologists who

17   prepare the reports (Claim 9); and (3) permit inmates to call adverse witnesses, including the

18   FAD psychologists, at the hearings (Claim 12).

19   Unlike plaintiffs' bias-related claims, these claims all address the process that is due

20   within the context of the parole hearing itself.  That is territory defined by Greenholtz, which

21   specifically held that the Constitution requires no more of a parole hearing than an opportunity to

22   be heard and a general statement of reasons for the denial.  Greenholtz, 442 U.S. at 16.  The Court

23

24   [15]  Defendants' failure to distinguish between "considering" and "overlooking" error is
     reminiscent of Lady Bracknell's declaration in *The Importance of Being Earnest*, in which, after

25   hearing of her nephew's outrageously bad conduct (he "devoured every single muffin"), she
     concludes, "Mr. Worthing, after careful consideration, I have decided entirely to overlook my

26   nephew's conduct to you."  Oscar Wilde, *The Importance of Being Earnest: A Trivial Comedy for*

27   *Serious People*, Act 3 at 65 (LiteraturePage.com Ed. 2014) (1899),
     literaturepage.com/read/importance-of-being-earnest-65.html, last visited November 24, 2014.

28

1   specifically rejected the claim that inmates are entitled to know what particular evidence in the

2   record the parole board relied on.  Id. at 5, 15.  Greenholtz establishes the minimum requirements

3   for conduct of a parole hearing, and due process does not require more.  See Pedro v. Oregon

4   Parole Board, 825 F.2d 1396, 1399 (1987); Reynolds v. McCall, 701 F.2d 810, 812 (9th Cir.

5   1983).  "Inmates are not entitled to be apprised of all the evidence relied upon by a parole board

6   in rendering its decision."  Bermudez v. Duenas, 936 F.2d 1064, 1066 (9th Cir. 1991).

7   　　　　In light of Greenholtz and progeny, Claims 4, 5, 9 and 12 do not state claims for

8   independent violations of plaintiffs' due process rights.  Accordingly, defendants' motion for

9   judgment on the pleadings should be granted on these claims.[16]   However, to the degree (if any)

10  that these claims include allegations supportive of the claim of systemic or individual bias, those

11  allegations are incorporated by reference in, and may properly be considered in relation to, those

12  bias claims.

13  　　　　C.  Dismissal of defendants

14  　　　　Defendants contend that all defendants other than the Governor and the Executive Officer

15  of the BPH should be dismissed from this lawsuit.  All defendants here are sued only in their

16  official capacities, and defendants argue that only the Governor and the Executive Officer could

17  possibly "carry out or enforce a Court ordered injunction against the Board."  ECF No. 55 at 22.

18  However, the Complaint does not only ask for injunctive relief, it seeks declaratory relief, namely

19  "that Defendants have denied Plaintiff's rights under the due process and equal protection clauses

20  of the state and federal Constitution."  Complaint Prayer for Relief ¶ 1.[17]  Defendants offer no

21  explanation for why the other defendants should be dismissed in light of this prayer for relief.

22  This request should be denied.

23

24  _____

25  [16]  The court need not consider the matter further, because plaintiffs did not defend these claims
    as independent causes of action in their opposition brief.  See BankAmerica Pension Plan v.

26  McMath, 206 F.3d 821, 826 (9th Cir.) ("A party abandons an issue when it has a full and fair
    opportunity to ventilate its views with respect to an issue and instead chooses a position that

27  removes the issue from the case"), cert. denied, 531 U.S. 952 (2000).
    [17]  Indeed, the first five of the nine prayers for relief are for declaratory relief.

28

VI.    CONCLUSION

In summary, plaintiffs' complaint consists of two basic claims that survive the motion for judgment on the pleadings: (1) a Due Process violation predicated upon the denial of a fair and unbiased parole procedure (the "systemic bias" claim), as principally embodied in the First and Eleventh Claims; and (2) a Due Process violation predicated upon the denial of fair and unbiased parole panels, as principally embodied in the Tenth Claim.  Claims Two, Three, Six, Seven, and Eight are construed not as independent causes of action but as additional factual predicates for the overarching bias claims.

For the reasons set forth above, the undersigned RECOMMENDS as follows:

(1)    That defendants' motion for judgment on the pleadings be GRANTED as to Claims Four, Five, Nine and Twelve, and otherwise DENIED;

(2)    That plaintiffs be granted 30 days of the date of this order to file an amended complaint alleging only the two remaining claims, or to file a statement that it will stand on the surviving claims of the current complaint s construed by the court; and

(3)    That defendants' motion to dismiss defendants be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 2, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE