KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
JENNIFER A. NEILL, State Bar No. 184697
Senior Assistant Attorney General
JESSICA N. BLONIEN, State Bar No. 189137
Supervising Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 327-3893
  Fax: (916) 322-8288
  E-mail: Jessica.Blonien@doj.ca.gov
*Attorneys for Defendants Shaffer, Beard, Brown, Kusaj, Hayward, Powers, and Fulbright*

KEITH WATTLEY, State Bar No. 203366
UnCommon Law
220 4th Street, Suite 103
  Oakland, CA  94607
  Telephone: (510) 271-0310
  Facsimile: (510) 271-0101
  Email: Kwattley@uncommonlaw.org
*Attorney for Sam Johnson and the Plaintiff Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **SAM JOHNSON,** | 2:12-cv-01059-KJM |
| Plaintiff, | **JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT** |
| v. | |
| **JENNIFER SHAFFER, et al.,** | Courtroom: 3<br>Judge: The Hon. Kimberly Mueller<br>Action Filed: April 20, 2012 |
| Defendants. | |

///

///

///

1

## INTRODUCTION

After engaging in more than three years of litigation and extensive settlement negotiations over a period of approximately six months, the parties entered into an Amended Stipulated Settlement to settle the claims in this class-action suit concerning the Board of Parole Hearings' (Board) forensic assessment protocols. The Amended Stipulated Settlement, if approved by the Court, would dispose of all claims in the case. The parties now jointly seek final approval of the Amended Stipulated Settlement.

The Court should grant final approval to the Amended Stipulated Settlement because, as the Court has already ruled, "the proposed settlement is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." (Order Granting Prelim. Approval 2, ECF No. 84.) And the Amended Stipulated Settlement makes significant changes to the Board's forensic assessment protocols that will establish a process for life-prisoners to object to factual errors contained in comprehensive risk assessments (CRAs), insert clarifying language into the CRAs to explain the tests used and the risk ratings, and provide for more frequent and therefore more current CRAs.

The inmates who have filed objections to the Amended Stipulated Settlement primarily oppose it under one of three categories: 1) objections related to their specific psychological evaluation; 2) objections that the psychological evaluations should be recorded and transcribed; and 3) objections that the risk assessment tools are unreliable and unverified, and that the claims found cognizable should not be abandoned.

The objecting class members have presented no evidence demonstrating that the Amended Stipulated Settlement is not the product of good-faith arm's-length negotiations after months of litigation and discovery, or that the Amended Stipulated Settlement is unfair, unreasonable or inadequate. The Court should therefore grant final approval to the Amended Stipulated Settlement

/ / /

2

## BACKGROUND

Plaintiffs are California life prisoner Sam Johnson, and a certified class consisting of California state prisoners who are serving life sentences and are eligible for parole consideration after having served their minimum terms.  The Defendants include the Executive Officer of the Board, Chief Psychologist of the Board, a Board Psychologist, the Secretary of the California Department of Corrections and Rehabilitation, and the California Governor,  who are sued in their official capacities as state officials.

This action was originally filed on April 20, 2012.  The case is proceeding on the Amended Complaint, which was filed on November 15, 2012.  The Court certified the case as a class action on March 31, 2014, and granted partial summary judgment in favor of Defendants –as to claims four, five, nine and twelve in the First Amended Complaint.

There have been two discovery periods, the first closing before the class was certified. Discovery was reopened, beginning with the exchange of initial disclosures in August 2014.  The parties then conducted additional discovery, which included depositions of Board officials, and Board psychologists involved in the forensic assessment protocols and parole process, and disclosure of training materials, reports and other documents.

The parties conducted extensive negotiations over several months to resolve Plaintiffs' demands concerning Board protocols used in forensic assessments prepared in anticipation of a parole consideration hearing.  Those negotiations occurred at arms' length and in good faith between Plaintiffs' counsel, Defendants' counsel, and Defendant Jennifer Shaffer, Executive Officer of the Board.  As a result of settlement negotiations the Board commenced reforming its forensic assessment protocols.  The parties reached agreement on changes to Defendants' forensic assessment protocols to settle Plaintiffs' claims.  The parties freely, voluntarily, and knowingly, with the advice of counsel, entered into the Amended Stipulated Settlement.

On October 7, 2015, the Court granted Preliminary Approval of Class Action Settlement, and found that "it is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and

3

defended this litigation." (Order Granting Preliminary Approval 2, ECF No. 339.)  The order set a hearing regarding final approval of the Stipulated Settlement for December 18, 2015 and ordered Defendants to post a Class Notice in CDCR's prisons.

In compliance with the Court's order, Defendants posted the Court-approved notice of the proposed class-action settlement in all of CDCR's prisons where class members reside.  (Decl. of Counsel Re Posting of Class Notices & Placement of Docs. in Prison Libraries, ECF No. 87.) They also placed copies of the Amended Stipulated Settlement, and the Court Order granting Preliminary Approval of Class Action Settlement in the prison law libraries.  (*Id.*)

The Court-approved Class Notice advised class members that they could file comments concerning the Stipulated Settlement through November 13, 2015.  To date, sixty inmates have filed comments with the Court.  Some of those comments, which are addressed further below, oppose the Amended Stipulated Settlement, some of those comments support the Amended Stipulated Settlement, and some neither support nor oppose the Amended Stipulated Settlement.

**SETTLEMENT TERMS**

A complete copy of the Amended Stipulated Settlement can be found in the Court's docket number 83. The following are the terms of the Amended Stipulated Settlement:

1. Consistent with the terms negotiated with Plaintiffs, the Board of Parole Hearings submitted a Budget Change Proposal for additional funding to administer CRAs every three years.  The budget change was approved.  As such, the Board will begin preparing new CRAs every three years for hearings scheduled to occur on or after June 1, 2016, if the CRA is older than three years.  For hearings advanced as a result of a petition to advance or the Board's administrative review process under Penal Code section 3041.5 (b)(4) or (d)(1), a new CRA will be conducted if the prisoner's most recent CRA is more than three years old at the time of the advanced hearing; if the most recent CRA is less than three years old at the time of the advanced hearing, a new CRA will not be completed.  The Board will revise its regulations to reflect this process.

///

4

2. Before the regulatory change in Paragraph 1 is submitted to the Office of Administrative Law (OAL), the Board will provide class counsel with a draft of the proposed regulation. Class counsel shall have thirty days to review the draft and provide written comments and suggestions to the Board. The Board will provide a written response to class counsel's written comments within thirty days. When the proposed regulation is presented to the Board's commissioners for review and a vote, class counsel may submit additional comments and suggestions through the Board's public comment process. Once the regulation is submitted to the OAL, class counsel may again submit additional comments and suggestions through the OAL public comment process.

3. In accordance with Paragraph 1, the Board will no longer conduct Subsequent Risk Assessments.

4. If, before December 31, 2016, the Board proposes any changes in how or whether the CRA, including the HCR-20 Version 3, PCL-R, or Static 99-R will be administered, or proposes using a risk-assessment tool other than the HCR-20 Version 3, PCL-R, and Static 99-R, class counsel may present an expert to discuss the proposed changes to the Board's commissioners in open session. The expert will be allowed to speak and answer questions for up to two hours. The expert must have experience with the use of risk assessments in a correctional setting.

5. The Board's Chief Psychologist will again provide a presentation to the Board's commissioners in open session regarding the recidivism rates for long-term offenders. The information presented to the commissioners will be provided in a text document and made available to class members through class counsel, on the Board's web site (www.cdcr.ca.gov/BOPH), and will be emailed to all attorneys on file with the Board who are currently representing life prisoners.

6. The Board's Chief Psychologist will again provide a presentation to the Board's commissioners in open session regarding when and how the Board uses the Static 99-R, a risk-assessment tool used to predict an offender's risk of sexual recidivism. This presentation will include a discussion of how the Static 99-R accounts for an offender's age and other factors that

can change over time.  The information presented to the commissioners will be provided in a text document and made available to class members through class counsel, on the Board's web site (www.cdcr.ca.gov/BOPH), and will be emailed to all attorneys on file with the Board who are currently representing life prisoners.

7. The Board will formalize a process for prisoners or their counsel to lodge timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole consideration hearing occurs.  If the Board receives a timely written objection in advance of a parole hearing, the Board will provide a written response within a reasonable period of time.  The Board will submit draft regulations to reflect this process to the OAL by July 1, 2016.

8. Before the regulatory change in Paragraph 7 is submitted to the OAL, the Board will provide class counsel with a draft of the proposed regulation.  Class counsel shall have thirty days to review the draft and provide written comments and suggestions to the Board.  The Board will provide a written response to class counsel's written comments within thirty days.  Class counsel will have additional opportunities to provide comments during the Board's and OAL's regular public comment periods.

9. When the Static 99-R is used, the CRA will inform the reader that the Static 99-R score alone generally does not assess dynamic characteristics that may mitigate or elevate a prisoner's risk.

10. All future CRAs will clarify that the Overall Risk Rating is relative to other life prisoners.

11. CRAs will inform the reader of the report that, generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences.

12. Plaintiffs will promptly dismiss all Defendants from this action except Defendant Jennifer Shaffer, the Board's Executive Officer.

13. The Court will retain jurisdiction over this case until January 1, 2017.

/ / /

14. If within 30 days after January 1, 2017, Plaintiffs believe that Defendants have not submitted regulations to the OAL, completed the agreed upon presentations to the Board, and provided language to Board psychologists with instructions to include it in CRAs, Plaintiffs may seek an extension of the Court's jurisdiction over this matter for a period not to exceed 12 months. To receive an extension of the Court's jurisdiction, Plaintiffs must demonstrate by a preponderance of the evidence that Defendants have not materially complied with the terms of this agreement. Defendants shall have an opportunity to respond to Plaintiffs' request and present their own evidence. If Plaintiffs do not seek an extension of the Court's jurisdiction within the period noted above, or the Court denies Plaintiffs' request for an extension, this agreement and the Court's jurisdiction shall automatically terminate, and the claims in this case shall be dismissed with prejudice.

15. It is the intention of the parties in signing this Settlement that upon completion of its terms it shall be effective as a full and final release from all claims asserted in the First Amended Complaint.

## ANALYSIS

### I.  THE CLASS NOTICE MET THE REQUIREMENTS OF DUE PROCESS.

By October 28, 2015, CDCR had placed copies of the Court-approved Class Notice in all housing units where class members reside. (Decl. of Counsel, ECF No. 87.) They also placed copies of the Amended Stipulated Settlement and the Court Order granting preliminary approval of the Stipulate Settlement, in the prisons' libraries where inmates could review them. (*Id.*) The posting of the Class Notice and the placement of materials in the libraries were well-calculated to alert all interested class members to the existence of the lawsuit, the nature of the allegations and claims, the terms of the proposed settlement, and their opportunity to file comments concerning the Amended Stipulated Settlement with the Court.

### II.  THE AMENDED STIPULATED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). And the Ninth

7

Circuit has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in the context of "complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted).

In reviewing proposed class-action settlement agreements, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. *Harris v. Vector Mktg. Corp.*, No. 08–cv–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Other factors courts consider in assessing a settlement proposal include:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The district court must explore these factors comprehensively to satisfy appellate review, but "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

Here, the Court has already found that the Amended Stipulated Settlement was the product of an arm's-length negotiation by Plaintiffs' counsel. (Order Granting Preliminary Approval 2.) Thus, the Amended Stipulated Settlement is entitled to a presumption of fairness. Additionally, the Court found that the Amended Stipulated Settlement was the result of "serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." *Id.*

The Court should also grant the Amended Stipulated Settlement final approval because it provides substantial equitable relief to class members. Defendants have agreed to settlement terms that directly address the class claims regarding the Board's forensic assessments. Life term prisoners will have more frequent (and therefore more current) CRAs, will have a process to seek correction of factual errors in their CRAs, clarifying language will be inserted into the CRAs and Board commissioners will receive additional training on use of the CRAs. The settlement was reached after months of negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation.

The settlement was also reached during a stage in the litigation after extensive discovery was completed, including numerous depositions and productions of documents. Thus, the parties had adequate time to fully evaluate the claims and defenses before engaging in settlement negotiations and reaching an agreement.

Further, the outcome of the litigation and the extent of any relief that the class might be awarded if the case were to go to trial is uncertain. As the magistrate acknowledged, Plaintiffs presented novel and difficult questions. (Order Granting Pls.' Unopposed Mot. for Att'ys Fees & Costs, ECF No. 90.) Defendants vigorously contested the claims raised by Plaintiffs. *Id*. Plaintiffs' experienced counsel assessed the strength of Plaintiffs' case, the risk, expense, complexity and the likely duration of further litigation and worked over several months to reach a settlement agreement that would change the Board's forensic assessment protocols in order to benefit the Plaintiff class. No evidence has been presented to demonstrate that the Amended Stipulated Settlement is unfair, unreasonable or inadequate.

### III. NONE OF THE COMMENTS REFUTE THE COURT'S PRELIMINARY FINDING THAT THE AMENDED STIPULATED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Class members who filed objections had a variety of comments and concerns. Some supported the settlement, some had concerns about their individual CRAs, and some had objections regarding claims brought in the Amended Complaint not being addressed. None of the objections presented evidence that the Stipulated Settlement was unfair, unreasonable or

9

inadequate. The settlement was reached after months of negotiations between the parties, who were zealously represented by their counsel throughout this litigation.

### A. The Settlement Allows Class Members to Bring Concerns about Individual CRAs through an Appeal Process.

The parties have agreed to "formalize a process for prisoners or their counsel to lodge timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole consideration hearing occurs. If the Board receives a timely written objection in advance of a parole hearing, the Board will provide a written response within a reasonable period of time." (Am. Stip. Settlement, p. 3.) Several of the class member objections related to alleged errors in their individual CRAs. If the Amended Stipulated Settlement is approved, those inmates will have a formal process in which to bring their objections and have them addressed.

Several class members also objected to the Amended Stipulated Settlement alleging that they should be given an audio recording or transcript of their interview with the psychologist completing the CRA. As alleged in the Amended Complaint this would allow class members to challenge the CRA. Roughly twenty percent of the filed objections assert that Defendants should be required to create an audio recording of the interviews between psychologists and members of the plaintiff class.

While the parties have not agreed that Defendants will record these interviews, the parties have agreed to an appeals process that provides a meaningful opportunity for prisoners to submit timely written objections asserting factual errors to CRAs and requires Defendants to provide a timely written response to those objections in advance of the scheduled parole hearing for the objecting prisoner. This process provides reasonable and adequate safeguards to factual errors that may be found in CRAs and will benefit the class. Although the Amended Stipulation does not does require the recording of risk assessment interviews, it does not prevent Defendants from adding other procedures in the future.

///

///

10

### B. Actionable Claims Were Addressed Through Arms-Length Negotiations to Achieve a Fair Settlement.

While there were several objections contending that claims about the risk-assessment tools should proceed to trial, these objections should not disrupt the settlement.  No evidence was presented through this stage of litigation to support the claim that the Board intentionally chose flawed risk instruments. Second, the Board continually evaluates the instruments used and has made changes when warranted.  Finally, the settlement allows the class to present expert testimony to the Board if it proposes any changes in how the CRA tools are administered.

In considering whether to approve a class action settlement the Court should consider the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the offered settlement; and the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026.  Some of the inmates object because the settlement does not address every claim that the court found cognizable when ruling on the Judgment on the Pleadings.  While in the early stages of litigation the Court may have found some claims cognizable, these same claims may not have had a strong likelihood of success at trial.  The standard to survive a motion for judgment on the pleadings is much less stringent than the standards applicable to a summary judgment motion or at trial.  *See, e.g.*, *Joseph v. Fischer*, 900 F. Supp. 2d 320, 328 (W.D.N.Y. 2012).  The parties conducted extensive discovery, and no evidence has been presented  to support the claim that the Board intentionally chose biased tools in order to reduce the rate of parole grants.  Second, evidence demonstrates that the Board continually evaluates the risk assessment tools and has taken steps to improve the process by eliminating one test (the LSCMI).  Finally, to the extent the Board might propose changes in the tools used, the Amended Stipulated Settlement allows the class to "present an expert to discuss the proposed changes to the Board's commissioners in open session.  The expert will be allowed to speak and answer questions for up to two hours."  (Am. Stip. Settlement p. 4.)

Counsel for both parties engaged in extensive arms-length negotiation to reach a fair settlement that benefits the class members while eliminating the risk of trial for both sides.

11

*Hanlon*, 150 F.3d at 1026.  The parties agree the Amended Stipulated Settlement is fair, adequate and reasonable, and that the risk, expense, and complexity of the case warranted settlement.

The objections relating to these risk assessment instruments state that the instruments are unreliable and have not been validated specifically for predicting the potential risk of future violent conduct by life-term inmates.  None of the objections, however, provide any new support for the assertion that the instruments are unreliable or improper for use among life-term inmates.  Without any such evidence, the objections do not demonstrate that the Stipulated Settlement is unfair, unreasonable, or inadequate.

## CONCLUSION

As the Court has already ruled, the Amended Stipulated Settlement is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation.  Thus, it is entitled to a presumption of fairness.  Furthermore, the objecting comments filed by class members fail to demonstrate that the Amended Stipulated Settlement does not fairly, reasonably, and adequately resolve the class's claims.  Accordingly, Plaintiffs and Defendants request that the Court grant final approval of the Stipulated Settlement.

Dated:  December 5, 2015                    Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California

*/s/ Jessica Blonien*

JESSICA N. BLONIEN
Supervising Deputy Attorney General
*Attorneys for Defendants*

Dated:  December 5, 2015                    UNCOMMON LAW

*/s/ Keith Wattley*

KEITH WATTLEY
*Attorney for Plaintiffs*

SA2013310229

12

Joint Mot. for Final Approval of Settlement Agreement (2:12-cv-01059-KJM)