UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM JOHNSON, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER SHAFFER, et al.,<br><br>Defendants. | No. 2:12-cv-1059 KJM AC P<br><br><br>ORDER |

      The parties to this action move jointly for final approval of class action settlement. (ECF No. 158.) The court held a hearing on the matter on December 18, 2015, at which Keith Wattley appeared for the plaintiff class and Jessica Blonien and Heather Heckler appeared for defendants. As explained below, the court GRANTS the parties' motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

      This class action lawsuit challenges the constitutionality of the protocol adopted by California's Board of Parole Hearings' (Board) Forensic Assessment Division (FAD) for use in the preparation of psychological evaluations to be considered in determining the suitability of class members for parole. The class consists of California state prisoners who are serving life sentences and are eligible for parole consideration after having served their minimum terms. (ECF No. 40 at 14; ECF No. 44 at 2.)

1    This action was filed on April 20, 2012. (ECF No. 1.) Following service of
2 process, defendants moved dismiss. (ECF Nos. 10, 11.)  By order filed October 18, 2012,
3 defendants' amended motion to dismiss was granted with leave to file an amended complaint.
4 (ECF No. 17.) On November 15, 2012, plaintiff filed an amended complaint containing sixteen
5 causes of action, (ECF No. 18), which defendants answered on December 6, 2012. (ECF No. 21.)
6 Thereafter, discovery commenced, plaintiff moved for class certification, (ECF No. 29), and
7 defendants moved for summary judgment. (ECF No. 30.) On November 1, 2013, the magistrate
8 judge issued findings and recommendations recommending that the motion for class certification
9 be granted and defendants' motion for summary judgment be granted in part and denied in part.
10 (ECF No. 40.) Specifically, the magistrate judge recommended that the motion be granted as to
11 plaintiff's equal protection and pendent state law claims, denied as to plaintiff's due process
12 claims insofar as defendants relied on *Swarthout v. Cooke*, 562 U.S. 216 (2011) to support the
13 motion, and denied in all other respects without prejudice to renewal after completion of
14 discovery. (ECF No. 40 at 21-22.) The findings and recommendations were adopted in full by
15 this court on March 31, 2014, (ECF No. 44), leaving only plaintiff's due process claims. (ECF
16 No. 62 at 3.)

17    On April 14, 2014, defendants filed a petition for permission to appeal the order
18 granting class certification. (*See* ECF No. 47.) On June 12, 2014, the United States Court of
19 Appeals for the Ninth Circuit denied the petition. (ECF No. 53.)

20    On September 26, 2014, defendants filed a motion for judgment on the pleadings.
21 (ECF No. 55.) On December 3, 2014, the magistrate judge issued findings and recommendations
22 recommending that the motion be granted as to four of the six claims remaining in the action and
23 denied as to two claims. (ECF No. 62.) The two surviving claims were characterized as "(1) a
24 Due Process violation predicated upon the denial of a fair and unbiased parole procedure (the
25 'systemic bias' claim), as principally embodied in the First and Eleventh Claims; and (2) a Due
26 Process violation predicated upon the denial of fair and unbiased parole panels, as principally
27 embodied in the Tenth Claims." (ECF No. 62 at 26.) Five of the claims were "construed not as
28 independent causes of action but as additional factual predicates for the overarching bias claims."

2

1 (ECF No. 62 at 26.)  On May 15, 2015, this court adopted the findings and recommendations and
2 set a status conference for August 13, 2015.  (ECF No. 68.)

3 Thereafter, on July 17, 2015, the parties filed a joint status report informing the
4 court of substantial progress in settlement negotiations.  (ECF No. 73.)  The court directed the
5 parties to file a further status report on their settlement efforts by August 11, 2015.  (ECF No. 76.)
6 The parties filed a joint statement on August 11, 2015, indicating that settlement negotiations had
7 been productive and they anticipated filing final settlement documents with the court by
8 September 10, 2015.  (ECF No. 77.)  The court continued the status conference, (ECF No. 78),
9 and on September 10, 2015, the parties filed a joint motion for preliminary approval of their
10 settlement agreement.  (ECF No. 79.)

11 On October 1, 2015, the court held a telephonic status conference on the motion
12 for preliminary approval.  (ECF No. 82.)  Following the status conference, the court granted the
13 motion, directed the parties to file a final version of the proposed settlement agreement removing
14 paragraph 15 and incorporating deadlines for posting notice in prison housing units, postmarking
15 comments to the court, filing final briefing, and setting a date for the final fairness hearing.  (ECF
16 No. 84.)

17 The court received numerous comments from prison inmates.  (ECF Nos.  91-114,
18 116-132, 134-153, 155-157, 160.)  On December 18, 2015, the court held a final fairness hearing.
19 (ECF No. 161.)  During the hearing, the court discussed with the parties issues raised in the
20 objections, including (1) whether risk assessment interviews can be recorded; (2) whether the risk
21 assessment tools have been validated or found reliable or proper for use in predicting potential
22 recidivism among life inmates; and (3) whether there is a procedure for objecting to factual errors
23 and/or conclusions in risk assessments.  (ECF No. 163.)   The court directed the parties to file
24 further briefing concerning the validity of the risk assessment tools at issue.  *Id*. at 8-9.  The
25 parties filed a joint brief and exhibits on January 8, 2016, (ECF Nos. 165, 166), which the court
26 has now considered.

27
28

II.     THE KEY TERMS OF THE SETTLEMENT AGREEMENT

Under the settlement agreement, defendants have agreed to the following changes in evaluating class members' eligibility for parole:

1. The Board agreed to, and did, submit a Budget Change Proposal to obtain additional funding in order to administer Comprehensive Risk Assessments (CRAs) every three years. (ECF No. 83 at 3.) The Board obtained the additional funding, and will now begin preparing new CRAs every three years for parole hearings scheduled on or after June 1, 2016, where the existing CRA is more than three years old. (*Id.*) Similarly, a new CRA will be prepared for hearings "advanced as a result of a petition to advance or the Board's administrative review process under California Penal Code § 3041.5(b)(4) or (d)(1)" where the existing CRA is more than three years old. These changes will be reflected in revised regulations. (*Id.*) Class counsel will be given multiple opportunities to comment to the Board and the Office of Administrative Law (OAL) on the proposed regulations. (*Id*. at 4.) As a result of these changes, the Board will no longer conduct Subsequent Risk Assessments. (*Id*.)

2. The agreement provides for class counsel to present an expert to the Board if, before December 31, 2016, the Board proposes any changes in how or whether the CRA will be administered, including any changes in the three risk assessment tools called into question by this action: the HCR-20 Version 3, PCL-R, and Static 99-R. The same expert presentation opportunity arises if the Board proposes using a risk-assessment tool other than the foregoing three tools. (*Id*.) The expert, who "must have experience with use of risk assessments in a correctional setting", will be allowed to speak and answer questions for up to two hours. (*Id*.)

3. The agreement provides for two presentations by the Board's Chief Psychologist to the Board's commissioners in open session, one regarding recidivism rates for long-term offenders and one regarding use of the Static 99-R, "a risk assessment tool used to predict an offender's risk of sexual recidivism." (*Id*. at 4.) The information presented to the Board will be put in text documents "and made available to class members through class counsel, on the Board's website . . . and . . .emailed to all attorneys on file with the Board who are currently representing life prisoners." (*Id*. at 4-5.) In addition, when the Static 99-R is used for a

risk assessment, the CRA "will inform the reader that the Static 99-R score alone generally does not assess dynamic characteristics that may mitigate or elevate a prisoner's risk." (*Id*. at 5.) Going forward, "CRAs will clarify that the Overall Risk Rating is relative to other life prisoners" and inform the report reader that "generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences." (*Id*.)

        4.   The Board will develop a formal process for inmates or their attorneys "to lodge timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole consideration hearing occurs." (*Id*.) The Board will provide a written response to timely objections. (*Id*.) These changes will be incorporated in proposed regulations to be submitted to the OAL by July 1, 2016. (*Id*.) Class counsel will be given multiple opportunities to comment to the Board and the OAL on the proposed regulations. (*Id*.)

        5.   All defendants will be dismissed except defendant Shaffer, the Executive Officer of the Board. (*Id*.) The court will retain jurisdiction over this action until January 1, 2017. (*Id*.) Plaintiffs may seek an extension of the court's supervision based on evidence of material non-compliance with the agreement. (*Id*.)

III.    THE SETTLEMENT AND FAIRNESS

    A.    Legal Framework

When parties settle a class action, a court cannot simply accept the parties' resolution; rather it must also satisfy itself the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). After the initial certification and notice to the class, a court conducts a fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1267 (9th Cir.2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."). A court must balance a number of factors in determining whether a proposed settlement is in fact fair, adequate and reasonable:

> [(1)] the strength of the plaintiffs' case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class action status throughout the trial; [(4)] the amount

>offered in settlement; [(5)] the extent of discovery completed and the stage of the proceedings; [(6)] the experience and views of counsel; [(7)] the presence of a governmental participant; and [(8)] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phx.*, 913 F.Supp.2d 964, 974–75 (E.D.Cal.2012). The list is not exhaustive, and the factors may be applied differently in different circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir.1982).

The court must consider the settlement as a whole, rather than its component parts, in evaluating fairness; the settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

B.     The Strength of Plaintiff's Case

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F.Supp. 1379, 1388 (D.Ariz.1989). The court cannot reach such a conclusion because evidence has not been fully presented and the "settlements were induced in large part by the very uncertainty as to what the outcome would be, had litigation continued." *Id*. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

A central issue in this action is the reliability of the three risk assessment tools referred to in the settlement agreement when used to evaluate the suitability of life inmates for parole. The parties disagree about the reliability of the instruments for use with California's life inmate population. (ECF No. 165 at 2-5.) The parties agree, however, that despite "extensive discovery" no evidence was presented "to support the claim that the Board intentionally chose flawed risk instruments." (ECF No. 158 at 11.)

6

The court agrees that evidence of such intent would be required for named plaintiff to prevail on his remaining claims. In light of the uncertainties of litigating this case in the face of this apparent evidentiary void, an immediate benefit to the purported class members is in their interest. *See Officers for Justice*, 688 F.2d at 625 (noting that "voluntary conciliation and settlement are the preferred means of dispute resolution").

This factor favors approving the settlement.

C. The Risk, Expense, Complexity and Likely Duration of Further Litigation

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D.Cal. Nov. 10, 2011) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc. (DIRECTV)*, 221 F.R.D. 523, 529 (C.D.Cal.2004)).  The Ninth Circuit has explained "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)).

Here, the parties agree there are significant risks associated with continued litigation of the claims in this case. The parties' dispute over the reliability of use of the risk assessment tools combined with the apparent dearth of evidence that defendants intentionally chose flawed risk instruments presents obstacles for plaintiff in pursuing these claims further.  In response to the court's directive at the fairness hearing, the parties have provided an extended list, accompanied by evidence, of "studies and literature validating the risk assessment tools," which defendants aver "support use of the risk assessment tools on California life inmates."  ECF No. 165 at 2-5 and evidence cited therein.  This highlights the nature of the dispute, which is not resolved by the court in approving this settlement agreement.  The difficulties plaintiff faces in turn would result in expenditure of more time and resources, for all parties. Given the high costs associated with litigating the claims at issue, and the potential lengthy duration of litigation, the court finds this factor too weighs in favor of approval.

These factors weigh in favor of approving the settlement.

7

      D.      <u>The Settlement Agreement</u>

      As discussed above, the settlement negotiated by the parties provides for new risk assessments for class members every three years, and defendants have agreed to develop a process by which inmates can submit formal written objections to factual findings in the risk assessments. These changes will be formalized in new regulations and class counsel will have opportunities to comment on the proposed regulations before they are adopted. The agreement also provides for two presentations to the Board, one on recidivism rates of long-term offenders, and one on use of one of the risk assessment tools at issue. In addition, the agreement provides that class counsel will be given an opportunity to present expert testimony to the Board if by the end of calendar year 2016 the Board proposes any changes in administration of the risk assessments, including the tools used. Finally, the agreement provides for this court's continuing supervision until January 1, 2017, or longer if it is demonstrated that material compliance with the agreement has not been achieved.

      Although the settlement does not require use of different risk assessment tools for use with California's life inmate population, it does incorporate several mechanisms that address concerns of possible bias in the risk assessment process and parole decisions based on such risk assessments. The parties have jointly moved the court to approve the settlement agreement, which was reached after "extensive arms-length negotiation." ECF No. 158 at 11. The nature of the settlement agreement weighs in favor of approval.

      E.      <u>The Extent of Discovery and the Stage of the Proceedings</u>

      This action has been pending for almost four years. The class was certified in March 2014, (ECF No. 44), and the parties have engaged in "extensive discovery", ECF No. 158 at 9. In addition, the claims have been narrowed through resolution of a motion for summary judgment and a motion for judgment on the pleadings. (ECF Nos. 44, 68.) The court is satisfied that the proceedings in this matter have provided the parties with sufficient information to enable them to reach a meaningful settlement agreement.

####  F.  The Experience and Views of Counsel

Class counsel is the founder and managing attorney of a non-profit organization that "provides advocacy and representation on behalf of individual prisoners and parolees, educates the public about the rights of life-term prisoners and parolees, and provides legal trainings to attorneys and law students across the state." (ECF No. 86-1 ¶¶ 1-2.) He has "litigated hundreds of prisoner and parolee cases over the last 15 years," including *In re Rutherford*, No. SC13599A (Superior Court for Marin County), a class action lawsuit that preceded this one and whose class had interests "closely aligned" with the present class. (*Id.* ¶ 2; ECF No. 40 at 19.) Defendants are represented by two attorneys with the California Office of the Attorney General, one of whom is a supervising deputy attorney general. The court has already found that counsel for both sides are "experienced and knowledgeable." (ECF No. 84 at 2.) Counsel agree that the settlement is fair and "benefits class members while eliminating the risk of trial for both sides." ECF No. 158 at 11. Accordingly, given the experience of counsel and their views, this factor favors approving the settlement. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D.Cal.2013).

####  G.  The Presence of a Governmental Participant

Here, defendants are state officials sued in their official capacities. (ECF No. 18 at 3-4.) There is no separate governmental participant involved in the issues presented by this litigation. *Cf. Hanlon*, *supra* (class action litigation against Chrysler Corporation seeking replacement of defective latches on minivans and damages paralleled National Highway Traffic Safety Administration investigation resulting in a voluntary resolution under which Chrysler agreed to, *inter alia*, replace the latches.) This factor is neutral.

####  H.  The Reaction of the Class Members to the Proposed Settlement

As noted above, the court received numerous comments from prison inmates. (ECF Nos. 91-114, 116-132, 134-153, 155-157, 160.)[1] The number of objections and the content

---

[1] On February 8, 2016, inmate Avon Davies filed a document styled "Ex Parte Request for Subclass Certification, for Permission to Reply to Amended Stipulated Settlements 'Proposed Findings,' and for issuance of Findings and Orders related to these matters." The court construes this document as a request for leave to file late objections to the proposed settlement and, so

of those objections raised concerns about the settlement that were discussed with the parties at the final fairness hearing.  One of those objections, the validity of the risk assessment tools, was the subject of further briefing required by the court.  The court is satisfied that the objections have been addressed by counsel and do not outweigh the other factors favoring approval of the settlement agreement.

IV.     FINAL APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE

In conclusion, after considering the parties' submissions and oral argument at the final fairness hearing, and after considering the relevant factors, the court finds final approval of the class settlement to be appropriate.  The court is mindful that "voluntary conciliation and settlement are the preferred means of dispute resolution" and that "[t]his is especially true in complex class action litigation. . . ."  *Officers for Justice*, 688 F.2d at 625.  The court concludes that the parties have reached a fair and adequate settlement and have satisfactorily addressed the questions raised by class members' objections.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to file the comments received from inmate Avon Davies nunc pro tunc to February 8, 2016; and

2. The joint motion of the parties for final approval of the settlement agreement (ECF No. 158) is GRANTED.

DATED:  May 26, 2016.

_____
UNITED STATES DISTRICT JUDGE

---

construed, the request will be granted.  The Clerk of the Court will be directed to file inmate Davies' comments nunc pro tunc to February 8, 2016.