UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAM JOHNSON, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

JENNIFER SHAFFER,

Defendant.[1]

No. 2:12-cv-1059 KJM AC P

ORDER

This class action lawsuit challenged the constitutionality of the protocol adopted by California's Board of Parole Hearings' (Board) Forensic Assessment Division (FAD) for use in the preparation of psychological evaluations, referred to as Comprehensive Risk Assessments (CRAs), to be considered in determining the suitability of class members for parole. It was settled by agreement of the parties. ECF No. 83 (hereafter "Agreement"). The court held a fairness hearing on December 18, 2015, ECF No. 161, and gave final approval to the Agreement in an order filed May 27, 2016. ECF No. 167. The case is now before the court on plaintiffs' motion to extend jurisdiction. ECF No. 175.

---

[1] Jennifer Shaffer is the sole defendant remaining in this action. *See* ECF No. 170. The Clerk of the Court will be directed to change the short title of this action to reflect this change.

1

## I. BACKGROUND

This action was filed on April 20, 2012. ECF No. 1. On March 31, 2014, the court certified a class consisting of California state prisoners who are serving life sentences and are eligible for parole consideration after having served their minimum terms. *See* ECF No. 40 at 14; ECF No. 44 at 2.

Following motion practice, the court dismissed several claims and two remained. ECF Nos. 62, 68. The court characterized the two surviving claims as "(1) a Due Process violation predicated upon the denial of a fair and unbiased parole procedure (the "systemic bias" claim), as principally embodied in the First and Eleventh Claims; and (2) a Due Process violation predicated upon the denial of fair and unbiased parole panels, as principally embodied in the Tenth Claims." ECF No. 62 at 26. As to five additional claims, the court "construed [them] not as independent causes of action but as additional factual predicates for the overarching bias claims." ECF No. 62 at 26.

On September 10, 2015, the parties filed a joint motion for preliminary approval of their settlement agreement. ECF No. 79. On October 1, 2015, the court held a telephonic status conference on the motion for preliminary approval. ECF No. 82. Following the status conference, the court granted the motion, directed the parties to file a final version of the proposed settlement agreement removing paragraph 15 and incorporating deadlines for posting notice in prison housing units, postmarking comments to the court, filing final briefing and setting a date for the final fairness hearing. ECF No. 84. The Agreement was filed October 2, 2015. ECF No. 83.

The court received numerous comments from prison inmates. *See* ECF Nos. 91-114, 116-132, 134-153, 155-157, 160. On December 18, 2015, the court held a final fairness hearing. ECF No. 161. During the hearing, the court heard from the parties regarding issues raised in the objections, including (1) whether risk assessment interviews can be recorded; (2) whether the risk assessment tools have been validated or found reliable or proper for use in predicting potential recidivism among life inmates; and (3) whether there is a procedure for objecting to factual errors and/or conclusions in CRAs. *See* Reporter's Transcript of Proceedings

Re: Fairness Hearing, ECF No. 163. The court directed the parties to file further briefing concerning the validity of the risk assessment tools adopted by defendant. *Id.* at 8-9. The parties filed a joint brief and exhibits on January 8, 2016. ECF Nos. 165, 166.

As noted above, the court gave final approval to the Agreement in an order filed May 27, 2016. ECF No. 167. The Agreement provided for the court's continued jurisdiction over the case until January 1, 2017. ECF No. 83 ¶ D13. It further provided:

> If within 30 days after January 1, 2017, Plaintiffs believe that Defendants have not submitted regulations to the OAL [Office of Administrative Law], completed the agreed upon presentations to the Board, and provided language to Board psychologists with instructions to include it in CRAs [Comprehensive Risk Assessments], Plaintiffs may seek an extension of the Court's jurisdiction over this matter for a period not to exceed 12 months. To receive an extension of the Court's jurisdiction, Plaintiffs must demonstrate by a preponderance of the evidence that Defendants have not materially complied with the terms of this agreement. Defendants shall have an opportunity to respond to Plaintiffs' request and present their own evidence. If Plaintiffs do not seek an extension of the Court's jurisdiction within the period noted above, or the Court denies Plaintiffs' request for an extension, this agreement and the Court's jurisdiction shall automatically terminate, and the claims in this case shall be dismissed with prejudice.

*Id.* ¶ D14.

On January 30, 2017, plaintiffs timely filed a motion to extend the court's jurisdiction. ECF No. 175. Defendant filed an opposition to the motion, ECF No. 176, and plaintiffs filed a reply. ECF No. 177. The court heard oral argument on March 10, 2017 and directed the parties to file supplemental briefs. ECF No. 178. The supplemental briefs were filed on March 24, 2017. ECF Nos. 182, 183. Plaintiff filed a notice of supplemental authority on September 22, 2017, ECF No. 184, to which defendant has responded, ECF No. 185.

II. PLAINTIFFS' MOTION

    A. <u>Plaintiffs' Opening Brief</u>

Plaintiffs' motion arises principally from paragraph C7 of the Agreement, which provides:

> 7. The Board will formalize a process for prisoners or their counsel to lodged timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole

> consideration hearing occurs. If the Board receives a timely written objection in advance of a parole hearing, the Board will provide a written response within a reasonable period of time. The Board will submit draft regulations to reflect this process to the OAL by July 1, 2016.

ECF No. 83 ¶ C7. Plaintiffs first contend the draft regulations were not timely submitted to OAL. ECF No. 175 at 9. Second, plaintiffs contend the draft regulations are not adequate in that (1) the draft regulations fail to provide the option of recording the CRA interviews; (2) the draft regulations contain "an unreasonably narrow definition of 'factual errors' to which class members may object in writing, inexplicably excluding broad swaths of common errors from the pre-hearing appeals process," *id*. at 9-10; (3) the draft regulations require class members to file objections to CRA reports no later than thirty days before their parole hearing or lose the right to object, but contain no deadlines by which the Board must provide those reports or by which the Board must address objections, *id*. at 10; and (4) the draft regulations permit factual errors in a CRA report to remain uncorrected in the file "unless the Board's Chief Psychologist finds that those errors 'materially impacted' the report's conclusions about violence risk," *id*. at 11. Plaintiffs contend defendant failed to notify or consult counsel at any major step in development of the draft regulations, and "have ignored the concerns repeatedly raised by Plaintiffs' counsel and class members" and have "undermine[d] the premise of the Agreement. . . ." *Id*. at 12.

Finally, plaintiffs contend defendant has failed to comply with paragraphs C10 and C11 of the Agreement, which provide:

> 10. All future CRAs will clarify that the Overall Risk Rating is relative to other life prisoners.
>
> 11. CRAs will inform the reader of the report that, generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences.

ECF No. 83 ¶¶ C10, C11.

/////

/////

/////

4

B. <u>Defendant's Opposition</u>

In opposition to the motion, defendant contends plaintiffs have not met their threshold burden of showing material noncompliance with the Agreement by the Board. Defendant contends plaintiffs are instead "improperly seek[ing] to amend the Agreement." ECF No. 176 at 2.

Defendant does not dispute that she did not submit the draft regulations to the OAL by July 1, 2016, the deadline in the agreement. ECF No. 176 at 19. She contends, however, that she delayed following the court's May 27, 2016 approval of the Agreement in order to give plaintiffs' counsel the time required by the Agreement to comment on the draft regulations, to give the Board time to respond to those comments, and to allow plaintiffs' counsel to submit additional comments to the Board's commissioners. *Id*. at 19. Defendant contends the delay does not constitute material noncompliance with the Agreement, particularly because she afforded plaintiffs' counsel all the notice and opportunity to comment on the draft regulations required by the Agreement, and the Board's commissioners considered the comments submitted by plaintiffs' counsel. *Id*. at 19-20.

With respect to the substance of the draft regulations, defendant contends plaintiffs' position concerning audio recordings is an impermissible attempt to alter the Agreement and that the record is clear audio recordings were not part of the Agreement. *Id*. at 13-14. Defendant contends she has defined "factual error" as required by the Agreement, *id*. at 14, and that the Agreement does not require the Board to establish a deadline for completing CRAs. *Id*. at 16. Defendant also contends the draft regulations "address Plaintiffs' concerns by specifically providing" for the Chief Counsel to determine whether there is time to review objections received less than thirty days prior to a parole hearing, and by allowing inmates who are not able to use the pre-hearing process because of a delayed CRA to raise their objection at the hearing and, if such an objection shows the CRA may contain a factual error, to postpone the parole hearing if necessary. *Id*. at 16-17. Defendant contends the Agreement does not require her to remove CRAs with immaterial factual errors from inmates' central files, *id*. at 17.

Finally, defendant contends all CRAs contain language required by paragraphs C10 and C11 of the Agreement. Specifically, defendant contends

> All CRAs now include one of the following explanations about the inmate's risk of violence. Which explanation is used is based on the inmate's overall risk rating of either low, moderate, or high, and does not vary.
>
> • Low Risk: "The inmate is a low risk of violence. He represents a non-elevated risk relative to long-term inmates and to other parolees. Low-risk examinees are expected to commit violence much less frequently than all other parolees."
>
> • Moderate Risk: "The inmate is a moderate risk of violence. He represents an elevated risk relative to long-term inmates and non-elevated risk relative to other parolees. Moderate-risk examinees are expected to commit violence more frequently than Low-risk long-term parolees but less frequently than other parolees."
>
> • High Risk: "The inmate is a high risk of violence. He represents a markedly elevated risk relative to long-term inmates and average risk relative to other parolees. High-risk examinees are expected to commit violence more frequently than Low- and Moderate-risk long-term parolees and similarly to other parolees."

*Id*. at 21. Defendant argues there is no showing this language "is inadequate or that some exact phrase must be used." *Id.*

    C.    <u>Plaintiffs' Reply</u>

In reply, plaintiffs apparently contest defendant's representation that the delay in presenting the draft regulations to the Board was due to defendant's compliance with parts of the Agreement requiring that plaintiffs' counsel be given notice and opportunity to comment. *See* ECF No. 177 at 2-3. Plaintiffs confirm each of their contentions with respect to the asserted inadequacies in the draft regulations, as well as the inadequacy of the language currently used by defendant to comply with paragraphs C10 and C11 of the Agreement.

    D.    <u>Supplemental Briefs</u>

At hearing, a question arose about the role certain representations made at the fairness hearing should play in interpretation of the Agreement. *See*, *e.g.*, ECF No. 181 at 7-8. The court directed the parties to file supplemental briefing on whether "there is authority that provides this Court guidance on how to address" interpretation of the Agreement if "there's a conflict between the four corners of the agreement and the representations made at the fairness

hearing." RT 181 at 17. The parties filed their supplemental briefs on March 24, 2017. ECF Nos. 182, 183.

Plaintiffs contend the court "must uphold the parties' intent as expressed in the Agreement and surrounding conduct." ECF No. 182 at 1. Plaintiffs also contend that analysis of the Agreement itself "yields the same conclusion" as an analysis that includes interpretation of "the phrase 'factual errors' in its ordinary sense, by reference to the underlying litigation, settlement negotiations, and representations made to the Court…" *Id*.

Defendant contends the court's review is limited to the "four corners" of the Agreement. ECF No. 183 at 2. She also contends that, while the court is not authorized to look beyond the four corners of the Agreement, all statements made by counsel at the fairness hearing "were wholly consistent with the Agreement." *Id*.

On September 22, 2017, plaintiffs filed a Notice of Supplemental Authority accompanied by a district court opinion plaintiffs contend is "illustrative of the way in which this Court should interpret the settlement agreement in a manner that is consistent with the underlying litigation, the settlement agreement, and the representations Defendants make to the Court and Plaintiffs in promising a meaningful appeal process allowing challenges to factual errors." ECF No. 184 at 2. On October 2, 2017, defendants filed a response in which they report that the order plaintiff relies on is now on appeal. ECF No. 185 at 1. This court's reasons for considering the representations of counsel in interpreting the settlement agreement in this action are explained below.

III. ANALYSIS

    A. Standards

The Agreement provides:

G. CONSTRUCTION OF SETTLEMENT

    This Settlement reflects the entire agreement of the parties and supersedes any prior written or oral agreements between them. No extrinsic evidence whatsoever may be introduced in any judicial proceeding to provide the meaning or construction of this Settlement. Any modification to the terms of this Settlement must be in writing and signed by a Board representative and attorneys for Plaintiffs and Defendants to be effective or enforceable.

> This Settlement shall be governed and construed according to California law. The parties waive any common-law or statutory rule of construction that ambiguity should be construed against the drafter of this Settlement, and agree that the language in all parts of this Settlement shall in all cases be construed as a whole, according to its fair meaning.
>
> This Settlement shall be valid and binding on, and faithfully kept, observed, performed, and be enforceable by and against the parties, their successors and assigns.

ECF No. 83 ¶ G.

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Construction and enforcement of the agreement also are governed by principles of contract law, *id.*, here, California contract law. "In California, a contract is to be interpreted 'to give effect to the mutual intention of the parties as it existed at the time of contracting.' Cal. Civ. Code § 1636. Interpretation begins with the contract's language which 'is to govern ... if the language is clear and explicit.' *Id.* § 1638." *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990); *see also United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("Under California law, the intent of the parties determines the meaning of the contract. Cal. Civil Code §§ 1636, 1638. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties. *Lawyer's Title Ins. Co. v. U.S. Fidelity & Guar. Co.*, 122 F.R.D. 567, 569 (N.D. Cal. 1988); *Beck v. American Health Group Int'l*, 211 Cal. App. 3d 1555, 260 Cal. Rptr. 237, 242 (1989)).

Under California law, "[w]hen the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." *Masterson v. Sine*, 68 Cal.2d 222, 225 (Cal. 1968).

> However, California also recognizes one of the broad exceptions to the parol evidence rule. Because "[n]o contract should ever be interpreted and enforced with a meaning that neither party gave it," 3 Arthur L. Corbin, *Corbin on Contracts* § 572B (rule no. 2) (West

/////

8

Supp.1991), parol evidence may be introduced to show the meaning of the express terms of the written contract.

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) (citing *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal. Rptr. 561, 563-65 (1968)). "To avoid completely eviscerating the parol evidence rule, however, there must be reasonable harmony between the parol evidence and the integrated contract for the evidence to be admissible." *Id.*

    B.    <u>Application</u>

Plaintiffs seek extension of this court's jurisdiction based on defendant's alleged material noncompliance with several separate provisions of the Agreement. Each is addressed in turn.

    1.    <u>Delay in Submission of Draft Regulations</u>

Paragraph C7 of the Agreement required the Board to submit draft regulations to the OAL by July 1, 2016. It is undisputed the Board did not submit the draft regulations until October 24, 2016. The Agreement also required the following process prior to submission of draft regulations to the OAL:

> [T]he Board will provide class counsel with a draft of the proposed regulation. Class counsel shall have thirty days to review the draft and provide written comments and suggestions to the Board. The Board will provide a written response to class counsel's written comments within thirty days. When the proposed regulation is presented to the Board's commissioners for review and a vote, class counsel may submit additional comments and suggestions through the Board's public comment process. Once the regulation is submitted to the OAL, class counsel may again submit additional comments and suggestions through the OAL public comment process.

ECF No. 83 ¶ C2.

The record shows the following. On June 14, 2016, eighteen days after this court gave final approval to the Agreement, the Board provided plaintiffs' counsel with a draft of the proposed regulations. ECF No. 175-3 at 2. On July 14, 2016, plaintiffs' counsel submitted to defense counsel written comments and requests for modification of the draft regulations. *Id.* The draft regulations were presented to the Board's commissioners on August 15, 2016. ECF No.

9

175-4 at 2. Plaintiffs' counsel attended the meeting, provided comments and "recommended tabling discussion on the regulations until the September, 2016 meeting." *Id*. at 10-11. The Board decided to table discussion of the regulations to the September 2016 meeting. *Id*. at 11. On September 16, 2016, plaintiffs' counsel submitted to defendant written objections to the draft regulations. ECF No. 175-3 at 14-21. Plaintiffs' counsel also attended the September 2016 meeting and made comments. ECF No. 175-4 at 24-25. The Board voted to approve the draft regulations. *Id*. at 24. The draft regulations were submitted to OAL on October 24, 2016, and on December 19, 2016, plaintiffs' counsel submitted objections to the draft regulations. ECF No. 175-3 at 22.

Based on the foregoing, the court finds defendant's delay in submitting the regulations to OAL does not constitute material non-compliance with the Agreement and does not, without more, provide grounds for extending this court's jurisdiction over the Agreement.

### 2. Paragraph C7: Objections to Factual Errors in CRAs

Paragraph C7 of the Agreement provides:

> The Board will formalize a process for prisoners or their counsel to lodge timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole consideration hearing occurs. If the Board receives a timely written objection in advance of a parole hearing, the Board will provide a written response within a reasonable period of time. The Board will submit draft regulations to reflect this process to the OAL by July 1, 2016.

ECF No. 83 ¶ C7. As discussed above, plaintiffs contend the draft regulations submitted to OAL are not in compliance with this provision in four ways, all material to compliance with the Agreement.

#### a) Audio Recordings

Plaintiffs' first contention is that the draft regulations do not provide for optional recording of the CRA interviews. Defendant counters that the Agreement does not require recording.

Nothing in the Agreement requires defendants to record or transcribe CRA interviews. *See* ECF No. 83, *passim*. At the final fairness hearing, the court heard from the parties on the issue of whether the risk assessment interviews should be recorded. *See* ECF No.

163 at 2-4. The court raised the issue in order to address objections raised by class members, a significant number of whom filed objections to the proposed settlement. *Id*. at 4. Both counsel informed the court that the parties had agreed it was "important to leave open the possibility of recording," although they had not been able to reach agreement on how to do that. *Id*. at 4, 6.

Proposed findings of fact filed jointly by the parties after the fairness hearing include the following:

> Inmate class members raised concerns about factual errors in comprehensive risk assessments and requested that psychologist interviews be recorded. Defendants do not currently have a practice of creating audio recordings of psychological interviews, and the parties have not agreed to make such recordings a component of the Amended Stipulated Settlement. However, the proposed Settlement requires a meaningful appeal process (to be established by regulations) through which individual prisoners who find factual errors in the Board's risk assessments may submit timely written objections, to which the Board must respond in a timely manner in advance of that prisoner's parole consideration hearing. Further, Defendants are not prevented from allowing recording of risk assessment interviews in the future.

ECF No. 165 at 5.

Finally, at hearing, defense counsel represented that, in reaching its decision not to include recording of CRA interviews in the regulations, the Board "indicated . . . that if, after getting into the preappeal – prehearing appeal process it became apparent that there was some sort of a repeated problem of these errors occurring, at that point the board could reconsider the issue of recording." ECF No. 181 at 5.

In sum, while the draft regulations do not provide for recording CRA interviews, the Board has not foreclosed the possibility of recordings in the future. The Agreement requires nothing more. The court's jurisdiction will not be extended for purposes of further supervision of this issue.

### b) Definition of Factual Errors

Plaintiffs next contend the draft regulations "provide an unreasonably narrow definition of 'factual errors' to which class members may object in writing, inexplicably excluding broad swaths of common errors from the pre-hearing appeals process." ECF No. 175 at 10. The draft regulations define "factual error" as

11

> an explicit finding about a circumstance or event for which there is no reliable documentation or which is clearly refuted by other documentation. Factual errors do not include disagreements with clinical observations, opinions, or diagnoses or clarifications regarding statements the risk assessment attributed to the inmate.

ECF No. 175-5 at 11. Plaintiffs contend this definition improperly omits "a CRA evaluator's errors in reporting statements attributed to an interviewee" and improperly shields "clinical observations, opinions, or diagnoses" even where those are "directly based on erroneous information." ECF No. 175 at 10. Defendants contend the definition prohibits inmates from objecting "based solely on their disagreement with the evaluator's *professional conclusions*, which can be properly addressed during the inmate's parole consideration" while allowing "an inmate to submit objections to a CRA where the inmate believes that a factual error materially impacted the risk assessment's conclusion." ECF No. 176 at 15 (emphasis in original)

As noted above, paragraph C7 of the Agreement provides in relevant part:

> The Board will formalize a process for prisoners or their counsel to lodge timely written objections asserting factual errors in a CRA (to be defined in the regulations) before their parole consideration hearing occurs.

ECF No. 83 ¶ C7. At the final fairness hearing, the parties represented that (1) they had decided to work out the definition of "factual errors" as part of developing the appeals process in the regulations required by the Agreement, and (2) factual errors would require reconsideration of, though not necessarily a change in, the conclusion in a CRA. ECF No. 163 at 10.

The language excluding "clarifications regarding statements the risk assessment attributed to the inmate" from the draft regulations' definition of "factual error" first appeared in an amended draft produced on or about August 4, 2016. *See* ECF No. 175 at 6; *compare* ECF No. 175-2 at 3 *with* ECF No. 175-2 at 7. In response to objections raised by plaintiffs' counsel to this provision, defendant added a provision to the draft regulations that would allow an inmate to "have the opportunity at a hearing to object to or clarify any statements a risk assessment attributed to the inmate, or respond to any clinical observations, opinions, or diagnoses in a risk assessment." ECF No. 175-3 at 56; ECF No. 175-5 at 13.

12

The question is whether plaintiffs have shown by a preponderance of evidence that the exclusion of CRA evaluator errors from the regulatory definition of "factual errors" constitutes "material" noncompliance with the Agreement. To answer that question, the court must determine the mutual intention of the parties in entering into the Agreement and whether the challenged provision is consistent or inconsistent with that intention.

The court's task is complicated by the fact that the Agreement itself does not define "factual errors" and instead simply signals that the definition will be included in the new regulations. Because the court is guided by the principles of California law, it looks to the objective intent of the parties "manifested in the agreement and by surrounding conduct," including representations at the fairness hearing and in the joint proposed findings of fact filed after the hearing, ECF No. 165. *See United Commercial Ins. Service, Inc.*, 962 F.2d at 856 (and citations therein).

At the outset, the court notes there is no meaningful dispute between the parties that "clarifications regarding statements the risk assessment attributed to the inmate" are factual statements, not professional judgments, nor could there be a dispute. Merriam-Webster defines "factual" as "1: of or relating to facts; and 2: restricted to or based on fact." https://www.merriam-webster.com/dictionary/factual. "Fact" is defined in relevant part as "1: a thing done; . . . 3: the quality of being actual; . . . 5: a piece of information presented as having objective reality." https://www.merriam-webster.com/dictionary/fact. Whether or not an inmate made a particular statement is a question of fact, and errors in describing those statements, whether in an initial description or a clarification of the statement, are factual errors. The question is whether exclusion of these types of "factual errors" from the pre-hearing appeal process constitutes material noncompliance with the intention of the parties in entering into the Agreement.

The representations at the fairness hearing demonstrate the parties' agreement that the process for objecting to factual errors would permit objections to factual errors but not to professional conclusions, and that the conclusions of CRAs found to contain factual errors, even "an inconsequential factual error," would be reconsidered but not necessarily altered if the factual

13

errors were not material to the conclusion. *See* ECF No. 163 at 10. In proposed findings of fact submitted jointly to the court following the fairness hearing, the parties agreed that the Agreement "requires a meaningful appeal process (to be established by regulations) through which individual prisoners who find factual errors in the Board's risk assessments may submit timely written objections, to which the Board must respond in a timely manner in advance of that prisoner's parole consideration hearing." ECF No. 165 at 5. The proposed findings of fact did not contain any limitation or qualification on the type of "factual error" that could be the subject of an objection.

At hearing, defense counsel suggested that one of the reasons this category was excluded from the definition of factual error was because these types of objections "would have to be investigated" and would "involve a credibility determination," which the Board's commissioners are trained to make. ECF No. 181 at 9-10. Defense counsel explained that at a parole hearing, the Commissioners "have the inmate right in front of them instead of just a written statement, and they can talk to them and fully vet the inmate's view. And so it's not just 'I didn't say that.' They can delve into, 'Well, what did you say? What were the questions asked?' They can consider what the inmate has to say and his or her demeanor as they're asking the questions." *Id*. at 10.

Whatever potential "efficiency" might be achieved, defendants' position, to permit such objections to be raised at a parole hearing, does not conform to the parties' mutual intention to create a process for reviewing factual errors in a CRA prior to the parole hearing. The court will extend its jurisdiction over this matter so the parties may redraft this part of the regulation to conform to their mutual intention at the time the Agreement was made, as represented to the court at the final fairness hearing.

Plaintiff's second objection is without merit. The draft regulations do provide for determinations to be made whether factual errors "materially impacted" the conclusions of a CRA and, where such errors did materially impact the conclusions, ordering of a "new or revised risk assessment." *See* ECF No. 175-5 at 11-12. The extension of the court's jurisdiction will not run to this issue.

14

### c) Timeline for CRAs, Objections and Responses

Plaintiffs' third contention is that the regulations do not contain a deadline by which the CRA must be completed, and that the deadline for responding to timely objections, set at ten days before a parole hearing, is inadequate. As the court has discussed, it is clear to the court that the mutual intention of the parties in drafting paragraph C7 of the Agreement was to create a process for correcting factual errors and any conclusions that flowed from material factual errors prior to an inmate's scheduled parole hearing. Completion of the CRA is the first step in this process and there must be a deadline for completion of the CRA that affords an inmate a meaningful opportunity to prepare and submit objections within the time set in the draft regulations for submission of objections. Plaintiffs also contend that the deadline for the Board's response, ten days in advance of a hearing, is not coordinated with the timeline by which they must decide whether to waive their hearings. ECF No. 175 at 10 n.1.

The court finds it was the mutual intent of the parties to create a meaningful pre-parole hearing process for raising, considering and resolving factual errors in CRAs. Deadlines and adequate review timelines are necessary components of that process. The court will extend jurisdiction so the parties may modify these provisions of the draft regulations.

### d) Retention of Factual Errors in CRAs in Central Files

Plaintiffs' final objection to this part of the draft regulations is that they permit CRA reports that contain factual errors to remain in an inmate's central file unless the Chief Psychologist determines "that the errors 'materially impacted' the report's conclusions about violence risk." ECF No. 175 at 11. This objection is well-taken.

The draft regulations set forth the following process for reviewing objections. First, the Chief Counsel reviews the risk assessment to which objection has been made to determine whether it "contains a factual error as alleged." ECF No. 175-5 at 12. If the Chief Counsel finds no factual error, the Chief Counsel issues a decision explaining the results of that review. *Id*. If the Chief Counsel finds a factual error, the matter is referred to the Chief Psychologist to review the assessment and "opine whether the identified factual error materially impacted the risk assessment's conclusions regarding the inmate's risk of violence." *Id*. The

Chief Psychologist's determination is to be documented in an addendum to the risk assessment. *Id*. If the Chief Psychologist's determination is that the factual error did not materially impact the CRA's conclusions, the objection is to be overruled by the Chief Counsel. *Id*. If the Chief Psychologist's determination is that the factual error did materially impact the conclusions, the Chief Counsel is required to order a new or revised risk assessment, among other things. *Id*.

As discussed above in the section on definition of factual error, the Agreement does not limit the types of factual errors to which objections can be raised during the pre-hearing review process. Instead, the intent of the Agreement was to provide a pre-hearing process for (1) correcting factual errors found in CRAs; (2) reviewing the conclusions of CRAs that contain factual errors; and (3) changing conclusions materially affected by factual errors. At the outset, the court notes that the draft regulations attempt to limit objections that can be raised to those factual errors in a CRA that an inmate or his counsel believe "materially impact the risk assessment's conclusions regarding the inmate's risk of violence." ECF No. 175-5 at 12. For that reason, the draft regulations provide that objections will be "overruled" if the factual errors cited in the objections "did not materially impact the risk assessment's conclusions regarding the inmate's risk of violence." *Id.*

This provision is contrary to the mutual intention of the parties as it has been represented to this court concerning the process for correcting factual errors in CRAs. Specifically, the proposed regulation conflates correcting factual errors in CRAs with amending conclusions affected by material factual errors. The parties' representations at the fairness hearing were to the contrary, demonstrating the parties' intention that a finding of factual errors in a CRA would generate review of the CRA's conclusions and amendment if the errors were material. To conform to the parties' expressed intent, the regulations must provide some mechanism for correcting factual errors in the relevant records. This does not necessarily require issuance of a new CRA in every instance in which factual errors are found, but it does require that the regulations contain provisions for ensuring factual errors do not stand uncorrected in a manner that they could still have force in the parole process, however, inadvertently. The court's

jurisdiction will be extended so the draft regulations may be amended to conform to the parties' intention to create a process for correcting factual errors in CRAs.

### 3. Paragraphs C10 and C11: Risk Rating and Recidivism

Finally, as discussed above, plaintiffs contend defendant has failed to comply with paragraphs C10 and C11 of the Agreement, which provide:

> 10. All future CRAs will clarify that the Overall Risk Rating is relative to other life prisoners.
>
> 11. CRAs will inform the reader of the report that, generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences.

ECF No. 83 ¶¶ C10, C11.

As noted above, defendant represents that:

> All CRAs now include one of the following explanations about the inmate's risk of violence. Which explanation is used is based on the inmate's overall risk rating of either low, moderate, or high, and does not vary.
>
> • Low Risk: "The inmate is a low risk of violence. He represents a non-elevated risk relative to long-term inmates and to other parolees. Low-risk examinees are expected to commit violence much less frequently than all other parolees."
>
> • Moderate Risk: "The inmate is a moderate risk of violence. He represents an elevated risk relative to long-term inmates and non-elevated risk relative to other parolees. Moderate-risk examinees are expected to commit violence more frequently than Low-risk long-term parolees but less frequently than other parolees."
>
> • High Risk: "The inmate is a high risk of violence. He represents a markedly elevated risk relative to long-term inmates and average risk relative to other parolees. High-risk examinees are expected to commit violence more frequently than Low- and Moderate-risk long-term parolees and similarly to other parolees."

ECF No. 176 at 21. This language does not comply with paragraphs C10 or C11 in two ways.

First, the language tendered by defendant does not make clear that the risk rating "is relative to other life prisoners" as required by paragraph C10 of the Agreement. Instead, the language compares the class member's risk to "long-term inmates and to other parolees." ECF No. 83 ¶ C10. This does not satisfy the requirement of paragraph C10 that the comparison be "to other life prisoners".

17

Second, nothing in the language provided by defendant informs the reader that "generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences" as required by paragraph C11.

Plaintiff has demonstrated by a preponderance of evidence that defendants have not materially complied with paragraphs C10 or C11 of the Agreement. The court's jurisdiction will therefore be extended to permit defendant to come into compliance with these provisions.

In accordance with the above, IT IS HEREBY ORDERED that

1. The Clerk of the Court is directed to change the short title of this action to reflect the dismissal of all defendants except Jennifer Shaffer; and
2. Plaintiffs' motion to extend jurisdiction, ECF No. 175, is granted in part, in accordance with this order. The court's jurisdiction shall terminate upon compliance with this order or one year from the date of this order, whichever is sooner.

DATED: October 6, 2017.

UNITED STATES DISTRICT JUDGE